# STEVEN C. WEYEL *v.* GREGORY M. CATANIA ET AL.
## (AC 17553)

Schaller, Sullivan and Kulawiz, Js.

Argued December 10, 1998—officially released March 16, 1999

*Martin S. Echter*, with whom was *Thomas W. Ude, Jr.*, deputy corporation counsel, for the appellant (named defendant).

*Erskine D. McIntosh*, for the appellee (plaintiff).

*Opinion*

SULLIVAN, J. The defendant, Gregory M. Catania,[1] appeals from a judgment for the plaintiff, rendered after a bench trial. The defendant claims that the trial court improperly (1) based its decision on various erroneous factual findings, (2) denied qualified immunity to the defendant, (3) denied the defendant's motion for recusal, (4) excluded from evidence part of a hospital record, (5) considered who would likely pay an adverse judgment and (6) awarded attorney's fees that were premature and excessive. We affirm the judgment of the trial court.

The trial court found the following facts. On August 21, 1993, New Haven police officer Allan Turechek and the defendant were conducting a stakeout in an unmarked police car for a suspect in the Westville section of New Haven. At approximately 10:45 p.m., the plaintiff and his girlfriend, Jessica Frisco, were driving through the area. After they argued, Frisco stopped the car and ordered the plaintiff to get out. The plaintiff walked toward the unmarked police car. Mistakenly believing the plaintiff to be the suspect, Turechek and the defendant identified themselves, ordered the plaintiff to stand against a fence and conducted a patdown

---

[1] Allan Turechek was also named as a defendant in this case. Judgment was rendered in his favor and only Gregory M. Catania has appealed. In this opinion, we refer to Catania as the defendant.

search for weapons. They then checked his identification and determined that he was not the suspect. At some point during this encounter, the plaintiff told the police that he was walking on the street because he and Frisco had had an argument. The officers told the plaintiff that he could return to Frisco's car, and Turechek remarked that the plaintiff and Frisco had "fucked up" the stakeout. One of the police officers then told the plaintiff to run. As the plaintiff continued to walk toward the car, the officers followed him, ostensibly to investigate possible domestic violence. Turechek stood on the driver's side of the car, and the defendant and the plaintiff stood on the passenger side. The defendant testified that the plaintiff was "somewhat arrogant" and had the smell of liquor on his breath. As the plaintiff put his right hand on the door handle and turned away from the defendant, the defendant pushed him into the rear passenger side window. The plaintiff suffered injuries to his shoulder, arm and head. Turechek and the defendant called their supervisor, Sergeant William Tinker. After the discussion with Tinker, the plaintiff and Frisco went to the police station to report the incident but, upon finding the internal affairs office closed, proceeded to Yale-New Haven Hospital. They reported the incident the next morning to internal affairs.

The plaintiff filed suit against Turechek and the defendant, alleging violations of 42 U.S.C. § 1983, false imprisonment, intentional infliction of emotional distress and negligence. The trial court found in favor of Turechek on all charges and found the defendant liable under § 1983 for using excessive force against the plaintiff. This appeal followed.

I

The defendant first claims that the trial court rested its decision on several factual findings that were not supported by the evidence. Specifically, he asserts that

the plaintiff's hospital records and the photograph of the injury contradict the plaintiff's description of the nature, extent and cause of the injuries, including the claim of a head injury. The defendant further argues that the actions of the plaintiff and Frisco immediately after the accident contradicted testimony about the nature and extent of the plaintiff's injuries, that the plaintiff and Frisco gave conflicting accounts of where they were standing and how the plaintiff was injured and that the claim that there was blood on the seat and the seat belt of the car was illogical. Additionally, the defendant argues that statements by the plaintiff and Frisco that the officers were out of control are contradicted by Frisco's statement that the plaintiff had been out of control in the argument they had had prior to the incident. The defendant also argues that the court improperly found that the plaintiff had particles of glass lodged in his arm.

Our standard of review is well established. "In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . A factual finding may be rejected by this court only if it is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Murphy* v. *Buonato*, 42 Conn. App. 239, 242, 679 A.2d 411 (1996), aff'd, 241 Conn. 319, 696 A.2d 320 (1997).

The defendant challenges the court's determinations of the credibility of testimony and the weight of the evidence. The trial court's findings are all supported by

evidence, and we are unpersuaded that a mistake was committed. We conclude that the trial court's factual determinations were not clearly erroneous.

## II

The defendant next claims that the trial court improperly rejected his claim of qualified immunity. We disagree.

"The defense of qualified immunity shields government officials from civil liability if the official's conduct did not violate constitutional rights that were clearly established at the pertinent time or if it was objectively reasonable for the official to believe that the conduct did not violate such rights." (Internal quotation marks omitted.) *Greenwood* v. *New York*, 163 F.3d 119, 121–22 (2d Cir. 1998). "State courts follow federal precedent in interpreting the doctrine of qualified immunity. *Martinez* v. *California*, 444 U.S. 277, 284 n.8, 100 S. Ct. 553, 62 L. Ed. 2d 481 (1980)." *Outlaw* v. *Meriden*, 43 Conn. App. 387, 395, 682 A.2d 1112, cert. denied. 239 Conn. 946, 686 A.2d 122 (1996). " 'As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights.' *Oliveira* v. *Mayer*, 23 F.3d 642, 648 (2d. Cir. 1994)." *Outlaw* v. *Meriden*, supra, 395. "[*A*]*ll* claims that law enforcement officers have used excessive force— deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." (Emphasis in original.) *Graham* v. *Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

"Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some

degree of physical coercion or threat thereof to effect it. See *Terry* v. *Ohio*, [392 U.S. 1, 22–27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)]. Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' *Bell* v. *Wolfish*, 441 U.S. 520, 559 [99 S. Ct. 1861, 60 L. Ed. 2d 447] (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham* v. *Connor*, supra, 490 U.S. 396.

The defendant does not argue that his conduct, as determined by the trier of fact, was reasonable. Instead, the defendant argues that his conduct was reasonable under his version of the facts, which the trier of fact rejected. Because the court's factual determinations were not clearly erroneous, we must accept them as the basis for the determination of reasonableness. The trial court, sitting as the trier of fact, reasonably found that the defendant pushed the plaintiff through a car window. The trial court did not find, nor did the defendant maintain, that the plaintiff had used any force against the defendant. Given these circumstances, we cannot say the trial court improperly determined that the defendant's actions were not objectively reasonable. Therefore, we conclude that the trial court properly denied the defendant qualified immunity.

### III

The defendant next claims that the trial judge improperly failed to recuse himself. Specifically, the defendant asserts that there was an "appearance of a conflict of interest," that the trial judge "concluded that the filing of the posttrial motion and the motion for recusal called into question his own honesty and integrity versus the

honesty and integrity of defense counsel" and that the court improperly credited the "word of a stranger" over the "sworn testimony of defense counsel despite the absence of any basis to cite counsel for contempt." We disagree.

The procedure for moving to disqualify a judge is set out in Practice Book § 1-23, formerly § 997.[2] "Both [an affidavit and a certificate that the motion was made in good faith] are required procedural adjuncts to a motion to recuse a judicial authority. Practice Book [§ 1-23]. Adherence to those procedures is necessary to obtain proper judicial review. *State* v. *Weber*, 6 Conn. App. 407, 412–13, 505 A.2d 1266, cert. denied, 199 Conn. 810, 508 A.2d 771 (1986)." *State* v. *Santangelo*, 205 Conn. 578, 585, 534 A.2d 1175 (1987); see also *State* v. *Teel*, 42 Conn. App. 500, 506–507, 681 A.2d 974, cert. denied, 239 Conn. 921, 682 A.2d 1012 (1996) (failure to comply with Practice Book § 997 deems record inadequate for review under first prong of *Evans-Golding* test). "A motion to disqualify a judicial officer because of the claimed possibility of bias is a serious matter. If counsel makes such a motion, it is not asking too much to require that he or she follow the established rules that treat it as such." *State* v. *Santangelo*, supra, 601.

The defendant here did not satisfy the rules of practice because counsel failed to attached "a certificate of the counsel of record that the motion is made in good faith." Furthermore, the defendant did not request a hearing to present evidence to support his request for judicial recusal. See *State* v. *Weber*, supra, 6 Conn. App.

---

[2] Practice Book § 1-23 provides: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time."

413. Under these circumstances, we need not consider this issue and decline to do so.

Even assuming arguendo that the recusal motion was proper, we conclude that the trial court properly denied the defendant's recusal motion. " 'A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned . . . .' Code of Judicial Conduct 3.C. (1); *State* v. *Fullwood,* 194 Conn. 573, 579, 484 A.2d 435 (1984). Disqualification of a trial judge is not dependent on proof of actual bias. The appearance and existence of impartiality are both essential elements of a fair trial. *Cameron* v. *Cameron,* 187 Conn. 163, 168–69, 444 A.2d 915 (1982); *Postemski* v. *Landon,* 9 Conn. App. 320, 322, 518 A.2d 674 (1986)." *State* v. *Santangelo,* supra, 205 Conn. 602.

The following additional facts are necessary for resolution of this claim. The trial judge lives in Bethany and is familiar with Nonnie's Delicatessen, an establishment managed by Frisco and owned by her parents. The judge stated, "I am acquainted with their store, not with [Frisco's] family." He had shopped at the store twice before the trial and once after the trial. He did not shop there during the trial. Moreover, the judge stated on the record that he "never saw Miss Frisco" at Nonnie's. The defendant's brief also suggests that the judge made off-the-record remarks that indicated an improper familiarity with Nonnie's Delicatessen.[3] We must confine our review to the record. We find no facts in the record that would reasonably call into question the impartiality of the trial judge.

We also find no merit to the defendant's contention that the court should have recused itself because of a bias against the defendant or defense counsel. The

[3] The defendant alludes to alleged off-the-record remarks made by the court at a posttrial meeting. We do not and will not consider those claims precisely because there is no record to review.

defendant has furnished no evidence that the court was biased in any way against the defendant. Defense counsel points to the fact that the court credited the word of a person who was not an attorney over defense counsel at a posttrial hearing. It is nonsensical to suggest that a trial court must either credit the testimony of an attorney over that of an individual who is not an attorney or face a charge of bias. No testimony bears an instant imprimatur of truth that insulates it from the scrutiny of the trier of fact. Moreover, the allegedly biased comments of the trial judge taken as a whole in their proper context do not reasonably cast doubt on the court's impartiality. On the contrary, the trial judge's actions were entirely proper.

## IV

The defendant next claims that the trial court improperly excluded from evidence part of a hospital record indicating that the plaintiff had an odor of alcohol on his breath. To review such a claim, this court must have an adequate record before it. It is the appellant's burden to provide an adequate record for appellate review. Practice Book § 61-10. The defendant has failed to provide us with a transcript of the court's hearing and ruling on this matter. The defendant's failure to provide that transcript renders this court unable to review his claim. See *Tomanelli* v. *Tomanelli*, 5 Conn. App. 149, 151, 497 A.2d 91, cert. denied, 197 Conn. 814, 499 A.2d 63 (1985).

## V

The defendant next claims that the trial court improperly considered who would likely pay a judgment against the defendant in rendering its decision. Essentially, the defendant argues that General Statutes § 7-465 prevents a trier of fact from taking into consideration whether a municipality will pay an adverse judgment

in the same way that evidence of liability insurance is generally not admissible in negligence actions.

We need not reach this issue because the defendant has not shown that the court considered who would pay the judgment or that any statement to that effect was made at trial. The only statement to which the defendant points was made in a posttrial hearing and is cited out of context. It is clear in the transcript that the trial court's statement had nothing to do with the finding of liability, nor does it indicate that the court's judgment was in any way tainted. We conclude that the trial court did not improperly consider who was likely to pay the adverse judgment.

## VI

The defendant finally claims that the trial court's award of attorney's fees to the plaintiff was excessive and inconsistent with "relevant law and evidence." We disagree.

## A

The defendant first argues that the trial court should not have awarded attorney's fees because the plaintiff is not a "prevailing party" within the meaning of 42 U.S.C. § 1988.[4] Specifically, the defendant claims that the plaintiff is not a prevailing party until the judgment in his favor has been upheld on appeal. The United States Supreme Court has stated that "[u]nder our 'generous formulation' of the term, plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." (Internal quotation marks omitted.) *Farrar* v.

---

[4] 42 U.S.C. § 1988 (b) provides in relevant part: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 . . . or title VI of the Civil Rights Act of 1964 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

*Hobby*, 506 U.S. 103, 109, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992). "The definition of prevailing parties is not limited to those who obtain a favorable final judgment following a full trial. . . . Civil rights plaintiffs who gain enforceable relief through a consent decree or settlement are also entitled to attorney's fees. . . . Moreover, a court may award attorney's fees pendente lite to a party who has secured some relief on the merits either at trial or on appeal." (Citations omitted.) *LaRouche* v. *Kezer*, 20 F.3d 68, 71 (2d Cir. 1994). The plaintiff in this case prevailed on the merits of his case, and the trial court properly exercised its discretion in awarding attorney's fees. We find no merit to the defendant's argument.

B

The defendant next argues that even if an award of attorney's fees was proper, the amount awarded by the court was excessive.

Section 1988 leaves the setting of award amounts to the discretion of the court. "No one can state the reasonable value of legal services as a fact. He can only express his opinion. The value is based upon many considerations." *Hoenig* v. *Lubetkin*, 137 Conn. 516, 524, 79 A.2d 278 (1951). With respect to awards pursuant to § 1988, those considerations include the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum* v. *Stenson*, 465 U.S. 886, 895–96 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). "A court has few duties of a more delicate nature than that of fixing counsel fees. The degree of delicacy increases when the matter becomes one of review on appeal. The principle of law, which is easy to state but difficult at times to apply, is that only in case of a clear abuse of discretion by the trier may we interfere. *Hayward* v. *Plant*, 98 Conn. 374, 382, 119 A. 341 [1923]; *Golstein* v. *Handley*,

390 Ill. 118, 125, 60 N.E.2d 851 [1945]. The trier is always in a more advantageous position to evaluate the services of counsel than are we." *Hoenig* v. *Lubetkin,* supra, 525.

The trial court in this case reached its decision after considering the submissions of both the plaintiff and the defendant as to what a reasonable fee should be. The $200 per hour award fell between the $260 per hour requested by the plaintiff and the $150 per hour limit suggested by the defendant. The trial court's decision took into consideration the length of experience, age and expertise of the plaintiff's counsel as compared to other attorneys in the community. We cannot say that the trial court abused its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.