## TERESA KULIG v. CROWN SUPERMARKET ET AL.
### (SC 15897)

Callahan, C. J., and Borden, Katz and Palmer, Js.[1]

Argued September 24, 1998—officially released September 14, 1999

[1] Justice Berdon originally was assigned to this case, but subsequently recused himself. The parties have consented to a determination of this appeal by the remaining four members of the panel. See General Statutes § 51-207.

*Jacek I. Smigelski*, with whom was *Timothy F. Mills*, for the appellant (plaintiff).

*James J. Dunham, Jr.*, for the appellees (defendants).

*Opinion*

PALMER, J. The principal issue raised by this appeal is whether the ten day limitation period prescribed by General Statutes § 31-301 (a)[2] for appealing an adverse decision of a workers' compensation commissioner (commissioner) to the compensation review board (board) begins to run from the date the commissioner sends notice of his or her decision to the party wishing to appeal, or from the date notice is received by that party.[3] We conclude that the ten day period commences

---

[2] General Statutes § 31-301 (a) provides in relevant part: "At any time within ten days after entry of an award by the commissioner . . . either party may appeal therefrom to the Compensation Review Board by filing in the office of the commissioner from which the award or the decision on a motion originated an appeal petition and five copies thereof. . . ."

[3] When we refer throughout this opinion to a party receiving notice, including the plaintiff, we are referring to the receipt of notice by that party's counsel, to the extent that the party is represented by counsel. In *Schreck* v. *Stamford*, 250 Conn. 592, 600–601, 737 A.2d 916 (1999), also decided today, we held that when a plaintiff wishing to appeal an adverse decision of a commissioner is represented by counsel in that appeal, the ten day limitation period prescribed by § 31-301 (a) begins to run on the date that the commissioner sends notice to the party's counsel, rather than to the party. As in *Schreck*, the plaintiff in this case was represented by counsel.

on the date that notice is sent to the party by the commissioner.

The relevant facts and procedural history may be summarized as follows. On March 7, 1994, the plaintiff, Teresa Kulig, was burned when she spilled a large pot of boiling soup on her legs in the course of her employment with the named defendant, Crown Supermarket,[4] in West Hartford. The plaintiff sought workers' compensation benefits under General Statutes § 31-308 (c)[5] for the scarring that she suffered as a result of those burns.

After a hearing, the commissioner concluded that the plaintiff was not eligible for benefits under § 31-308 (c)[6] and, on March 19, 1996, sent notice of his findings and decision to counsel for the parties by certified mail pursuant to General Statutes § 31-321.[7] The defendants' counsel received notice on March 20, 1996. The plaintiff's attorney, however, claims not to have received

[4] Crown Supermarket's insurance carrier also is a defendant in this case.

[5] General Statutes § 31-308 (c) provides in relevant part: "[T]he commissioner . . . may award compensation . . . for any permanent significant disfigurement of, or permanent significant scar on, (A) the face, head or neck, or (B) on any other area of the body which handicaps the employee in obtaining or continuing to work. . . . [N]o compensation shall be awarded for any scar or disfigurement which is not located on (A) the face, head or neck, or (B) any other area of the body which handicaps the employee in obtaining or continuing to work. . . ."

[6] The commissioner concluded that the plaintiff did "not qualify for scarring benefits under [§ 31-308 (c)] because her scarring [was] not on the face, head or neck and . . . she [was] able to continue with her regular occupation at Crown Supermarket [at that time]."

[7] General Statutes § 31-321 provides in relevant part: "Unless otherwise specifically provided, or unless the circumstances of the case or the rules of the commission direct otherwise, any notice required under [the Workers' Compensation Act] to be served upon an employer, employee or commissioner shall be by written or printed notice, service personally or by registered or certified mail addressed to the person upon whom it is to be served at his last-known residence or place of business. . . ." See also *Kudlacz* v. *Lindberg Heat Treating Co.*, 3407 CRB 8-96-8 (June 6, 1997) ("[i]n order to facilitate a determination of when notice of a decision is sent . . . all commissioners [must] send out notices of their decisions via certified mail").

notice of the commissioner's decision until April 24, 1996, thirty-five days after it had been mailed to him. The plaintiff filed an appeal from the commissioner's decision on May 2, 1996, eight days after receiving notice but forty-three days after the commissioner had sent that notice by certified mail.

The board dismissed the plaintiff's appeal on the ground that it had not been filed within the ten day limitation period of § 31-301 (a). In dismissing the appeal, the board stated that it was bound by decisions of our Appellate Court in which that court held that the ten day period commences on the day that the commissioner sends notice of his or her decision to the party wishing to appeal. See, e.g., *Freeman* v. *Hull Dye & Print, Inc.*, 39 Conn. App. 717, 720, 667 A.2d 76 (1995); *Conaci* v. *Hartford Hospital*, 36 Conn. App. 298, 303, 650 A.2d 613 (1994). The board, therefore, concluded that it lacked subject matter jurisdiction over the plaintiff's appeal.[8] *Kulig* v. *Crown Supermarket*, 3335 CRB 6-96-5 (November 25, 1997). The plaintiff appealed from the decision of the board to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1, and General Statutes § 51-199 (c).

---

[8] The board stated: "We do not have the authority to overrule . . . [the] decisions of our Appellate Court that specifically address this matter, despite the claimant's vehement protests that the . . . standard [adopted by the Appellate Court] ignores the reality that notice is not always received within ten days after it is mailed. The simple fact is that this board does not have jurisdiction to consider the merits of a claim once we determine that an appeal is untimely, as it was here. . . . Legally, we can do nothing but dismiss this appeal." (Citation omitted.) *Kulig* v. *Crown Supermarket*, 3335 CRB 6-96-5 (November 25, 1997). The plaintiff does not challenge the conclusion of the board that it lacks subject matter jurisdiction over an appeal by a party who has failed to comply with the ten day limitation period of § 31-301 (a). See, e.g., *Chieppo* v. *Robert E. McMichael, Inc.*, 169 Conn. 646, 648, 363 A.2d 1085 (1975); *Freeman* v. *Hull Dye & Print, Inc.*, supra, 39 Conn. App. 720.

The plaintiff claims that the ten day appeal period prescribed by § 31-301 (a) commences on the date that a party wishing to appeal receives notice of the commissioner's decision, rather than the date on which the commissioner sends notice to that party. In support of this contention, the plaintiff argues that it is fundamentally unfair to deprive a party of the right to appeal solely because of a failure of notice for which the party bears no responsibility. According to the plaintiff, the legislature reasonably could not have intended such a constitutionally suspect result. Although we agree with the plaintiff that the legislature did not intend such a result, we need not, and do not, construe § 31-301 (a) in the manner that the plaintiff advocates. Rather, we conclude, consistent with our decision in *Kudlacz* v. *Lindberg Heat Treating Co.*, 250 Conn. 581, 738 A.2d 135 (1999),[9] and in accordance with established Appellate Court precedent, that the ten day appeal period begins to run from the date on which notice is sent by the commissioner, subject to the tolling of the ten day period when a party wishing to appeal establishes that, through no fault of his own, he did not receive notice within ten days of the date that notice was sent.

"[T]he process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . As with any issue of statutory interpretation, our initial guide is the language of the statute itself. . . . Furthermore, we interpret statutory language in light of the purpose and policy behind the enactment. . . .

[9] The plaintiff in *Kudlacz*, although represented by the same attorney as the plaintiff in this case, did not claim that the ten day appeal period prescribed by § 31-301 (a) should be construed to run from the date that notice is received by the party wishing to appeal. See generally *Kudlacz* v. *Lindberg Heat Treating Co.*, supra, 250 Conn. 586. Rather, the plaintiff in *Kudlacz* argued, and we agreed, that the ten day period is tolled when, through no fault of the party wishing to appeal, that party did not receive notice of the commissioner's decision within ten days of the date that the commissioner sent notice to the party. Id., 590–91.

Finally, in seeking to ascertain the intent of the legislature regarding the proper construction of § 31-301 (a), we are guided by the golden rule of statutory interpretation . . . that the legislature is presumed to have intended a reasonable, just and constitutional result. . . .

"Construed literally, § 31-301 (a) mandates that a party who wishes to appeal from an adverse ruling of the commissioner do so within ten days after the commissioner renders his or her decision. See General Statutes § 31-301 (a). We previously have eschewed a literal interpretation of the ten day appeal period of § 31-301 (a), however, concluding that the legislature [u]ndoubtedly . . . intended this provision to mean ten days *after notice to the party of the entry of such finding*; otherwise, in the event of the failure of the commissioner to notify the party of his finding and award within the ten-day period, the taking of the appeal would be fruitless. . . . *Murphy* v. *Elms Hotel,* 104 Conn. 351, 352, 133 A. 106 (1926) (interpreting General Statutes [1918 Rev.] § 5366, as amended by Public Acts 1919, c. 142, § 14, predecessor to § 31-301). Fundamental rights to procedural due process mandate such a construction. *Trinkley* v. *Ella Grasso Regional Center,* 220 Conn. 739, 743, 601 A.2d 515 (1992)." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Kudlacz* v. *Lindberg Heat Treating Co.,* supra, 250 Conn. 587–88.

The plaintiff claims that the same constitutional considerations compel the conclusion that the ten day appeal period of § 31-301 (a) does not begin to run until notice of the commissioner's decision is received by the party wishing to appeal. In *Kudlacz* v. *Lindberg Heat Treating Co.,* supra, 250 Conn. 581, which we also decide today, we recognized the "obvious unfairness inherent in depriving an aggrieved party of the right to appeal the commissioner's decision solely because of a failure of notice beyond that party's control . . . ." Id., 588. In light of this unfairness, we concluded in

*Kudlacz* "that the ten day appeal period of § 31-301 (a) is tolled when the aggrieved party establishes that, through no fault of his own, he did not receive notice of the commissioner's decision within ten days of the date that it was sent." Id., 590–91. In so concluding, we operated on the assumption that the ten day appeal period of § 31-301 (a) commences on the date that notice of the commissioner's decision is *sent* to the aggrieved party. Our holding in *Kudlacz*, therefore, addresses, and eliminates, the due process concerns that the plaintiff in this case raises in support of her argument regarding the proper construction of § 31-301 (a). The plaintiff makes no other argument as to why we should overrule established Appellate Court precedent holding that the ten day appeal period begins to run from the date notice is sent, and we decline to do so.

As we have indicated, the Appellate Court consistently has held "that the ten day appeal period [of § 31-301 (a)] begins to run on the day on which the party wanting to appeal is *sent* meaningful notice of the commissioner's decision." (Emphasis added.) *Conaci* v. *Hartford Hospital*, supra, 36 Conn. App. 303; accord *Vega* v. *Waltsco, Inc.*, 46 Conn. App. 298, 301, 699 A.2d 247 (1997); *Cyr* v. *Domino's Pizza*, 45 Conn. App. 199, 203–204 n.5, 695 A.2d 29 (1997); *Freeman* v. *Hull Dye & Print, Inc.*, supra, 39 Conn. App. 720. In explaining this conclusion, the Appellate Court in *Conaci* observed that this court's decision in *Trinkley* v. *Ella Grasso Regional Center*, supra, 220 Conn. 743, "implied that the operative date from which the limitation period for appeals to the . . . board should run is the date that notice is given to the party who might want to appeal." *Conaci* v. *Hartford Hospital*, supra, 303. In *Conaci*, the Appellate Court sought to "follow the direction [this court had taken] in *Trinkley* [and] . . . decline[d] to adopt the . . . position that the appeal period commences when notice of the appealable decision is

received [because such] a holding would create undue delay and difficulties in proving receipt by the party wanting to appeal."[10] Id. We agree with this reasoning. Accordingly, we conclude that the ten day appeal period prescribed by § 31-301 (a) begins to run on the date that notice is sent by the commissioner, rather than on the date that notice is received.[11]

In accordance with our holding in *Kudlacz*, however, the plaintiff is entitled to establish that: (1) through no fault of her own, she failed to receive notice of the commissioner's decision within ten days of the date that she was sent such notice by the commissioner;[12] and (2) the plaintiff's petition for review of the commissioner's decision was filed within ten days of the date that she received notice of that decision. See *Kudlacz* v. *Lindberg Heat Treating Co.*, supra, 250 Conn. 590–91. If, on remand, the plaintiff can make such a showing, then her appeal to the board must be reinstated.[13]

The decision of the board is reversed and the case is remanded to the board for further proceedings according to law.

In this opinion the other justices concurred.

---

[10] In addition to these difficulties, the construction urged by the plaintiff frequently would result in one party to a case having an appeal deadline different from that of another party to the same case.

[11] Of course, this conclusion is subject to our holding in *Kudlacz* regarding the tolling of that appeal period in the circumstances described previously. See footnote 9 of this opinion.

[12] Because the plaintiff was represented by counsel, she actually must show that counsel, through no fault of his own, failed to receive the commissioner's notice within the ten day appeal period. See *Schreck* v. *Stamford*, 250 Conn. 592, 600–601, 737 A.2d 916 (1999); footnote 3 of this opinion.

[13] The plaintiff also claims that she never received proper notice of the commissioner's decision because, under § 31-301 (a), the commissioner was required to send notice to her, as the party, rather than to her attorney. This claim, however, is foreclosed by our decision in *Schreck* v. *Stamford*, 250 Conn. 592, 600–601, 737 A.2d 916 (1999); see footnote 3 of this opinion; which we also decide today.