STATE OF CONNECTICUT *v.* ARTHUR COSCUNA
(AC 19180)

Foti, Hennessy and Healey, Js.

Argued April 4—officially released August 22, 2000

*Pasquale Young,* for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Lisa A. Riggione,* senior assistant state's attorney, for the appellee (state).

*Opinion*

HEALEY, J. The defendant, Arthur Coscuna, appeals from the judgment of conviction, rendered after a trial to the court, of improper parking in violation of General Statutes § 14-251[1] and failure to signal in violation of

[1] General Statutes § 14-251 provides: "No vehicle shall be permitted to remain stationary within ten feet of any fire hydrant, or upon the traveled portion of any highway except upon the right-hand side of such highway in the direction in which such vehicle is headed; and, if such highway is curbed, such vehicle shall be so placed that its right-hand wheels, when stationary, shall, when safety will permit, be within a distance of twelve inches from the curb. No vehicle shall be permitted to remain parked within twenty-five feet of an intersection or a marked crosswalk thereat, or within twenty-five feet of a stop sign caused to be erected by the traffic authority in accordance with the provisions of section 14-301. No vehicle shall be permitted to remain stationary upon the traveled portion of any highway at any curve or turn or at the top of any grade where a clear view of such vehicle may not be had from a distance of at least one hundred and fifty feet in either direction. The Commissioner of Transportation may post signs

General Statutes § 14-244.[2] On appeal, the defendant claims that the trial court improperly determined that there was sufficient evidence to find him guilty of violating either statute.[3] We affirm the judgment of the trial court.

upon any highway at any place where the keeping of a vehicle stationary is dangerous to traffic, and the keeping of any vehicle stationary contrary to the directions of such signs shall be a violation of this section. No vehicle shall be permitted to remain stationary upon the traveled portion of any highway within fifty feet of the point where another vehicle, which had previously stopped, continues to remain stationary on the opposite side of the traveled portion of the same highway. No vehicle shall be permitted to remain stationary within the limits of a public highway in such a manner as to constitute a traffic hazard or obstruct the free movement of traffic thereon, provided a vehicle which has become disabled to such an extent that it is impossible or impracticable to remove it may be permitted to so remain for a reasonable time for the purpose of making repairs thereto or of obtaining sufficient assistance to remove it. Nothing in this section shall be construed to apply to emergency vehicles and to maintenance vehicles displaying flashing lights or to prohibit a vehicle from stopping, or being held stationary by any officer, in an emergency to avoid accident or to give a right-of-way to any vehicle or pedestrian as provided in this chapter, or from stopping on any highway within the limits of an incorporated city, town or borough where the parking of vehicles is regulated by local ordinances. Violation of any provision of this section shall be an infraction."

[2] General Statutes § 14-244 provides: "Any stop or turn signal required by section 14-242 or 14-243 may be given either by means of the hand and arm or by a signal lamp or lamps or mechanical signal device. Hand signals shall be as follows: (1) To stop or decrease speed: Hand and arm extended downward; (2) to turn left or to leave or draw away from a curb or the edge of the highway: Hand and arm extended horizontally with forefinger pointed; (3) to turn right: Hand and arm extended upward. Each operator of a motor vehicle who makes a turn signal by means of signal lamps or mechanical signal device shall turn in the direction indicated and return such signal to the nonoperating position immediately after completing the movement for which a signal has been given. Violation of any of the provisions of this section shall be an infraction."

General Statutes § 14-242 provides in relevant part: "(c) No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided in section 14-244 to the driver of any vehicle immediately to the rear when there is opportunity to give such signal. . . .

"(f) Violation of any of the provisions of this section shall be an infraction."

[3] There are certain subissues, especially as to his claim regarding the violation of § 14-251, that are set forth in our discussion of the defendant's claims.

The court reasonably could have found the following facts. On May 23, 1998, at about 3:15 a.m., the defendant was operating his 1996 Cadillac El Dorado westbound on East Main Street, a public highway in Meriden. On that portion of East Main Street, there is one lane in each direction. At that time, John Williams, an officer with the Meriden police department, was patrolling westbound on East Main Street in a marked police cruiser. Williams observed two vehicles also headed in a westerly direction, one behind the other, which were stopped in the middle of the highway. The first of these two vehicles was that of the defendant, who had the westbound lane completely blocked.[4] When Williams first saw the defendant's vehicle, it was stopped.[5]

For approximately two or three minutes, Williams sat in his cruiser behind both vehicles and observed the defendant talking through the car window to a woman who was standing on the sidewalk. After a few minutes, the operator of the vehicle immediately behind the defendant drove around the defendant's vehicle, crossed into the other lane over the double yellow lines and drove off. Another minute or so passed, and Williams pulled his cruiser behind the defendant's vehicle. As he was doing so, the defendant was still talking to the female pedestrian. The pedestrian then got into the defendant's vehicle and they drove away. Williams followed the defendant for one-half block before signaling him to pull over.

Williams gave the defendant a motor vehicle summons for improper parking in violation of § 14-251 and failure to signal in violation of § 14-244. He pleaded not guilty to those charges and appeared at a hearing before a magistrate. The magistrate found him not guilty of

[4] Also, there were numerous vehicles parked along the curb of East Main Street.

[5] The defendant was double-parked at the time, and his brake lights and signal lights were operating properly.

violating § 14-244 and guilty of violating § 14-251. There-
after, a trial de novo was held in the Superior Court
before *Dunnell, J.* The defendant moved for a judgment
of acquittal at the end of the state's case as well as at
the close of the entire case. The court denied both
motions. The court found the defendant guilty on both
charges and fined him $90 on each infraction. This
appeal followed. Additional facts will be discussed
where necessary.

## I

The defendant claims that the court improperly deter-
mined that he violated § 14-251. We disagree.

## A

The defendant claims first that § 14-251 does not
apply in Meriden. We disagree.

The defendant argues that § 14-251 is not applicable
because Meriden has adopted its own parking regula-
tions. In making this claim, the defendant draws on the
language of § 14-251, which provides in relevant part:
"Nothing in this section shall be construed to . . . pro-
hibit a vehicle from . . . stopping on any highway
within the limits of an incorporated city, town or bor-
ough where the parking of vehicles is regulated by local
ordinances. . . ." In support of that position, he cites
an opinion rendered by the office of the attorney gen-
eral.[6] He argues that the city of Meriden has adopted
its own parking regulations and, therefore, § 14-251
does not apply in Meriden.

The state objects to any consideration of this claim
sounding in preemption. In doing so, the state contends

---

[6] The defendant cites a 1950 opinion by the attorney general. See Opinions,
Conn. Atty. Gen. No. 50-94 (March 9, 1950). The opinion by the attorney
general, however, is the only legal authority cited in the defendant's brief
on what fairly can be called a claim of preemption. "The opinion of the
attorney general is entitled to substantial weight, but is not binding on the
court." *Cairns* v. *Shugrue,* 186 Conn. 300, 309, 441 A.2d 185 (1982).

that the burden of proving that a superseding local ordinance regulating parking involves an affirmative defense for the defendant to prove and not an element of the infraction, as the defendant appears to claim. In any event, the state claims that review of the superseding local ordinance also is unwarranted because this defense was not mentioned at trial, and the defendant did not address *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), in his appeal.[7] In effect, the defendant, through his preemption claim, is contending that the Meriden parking ordinance applies, as opposed to the state statutes. Therefore, although the state's argument regarding the defendant's lack of acknowledgement of *Golding* is correct, we must reach this issue because it would be error as a matter of law to have submitted a wholly inapplicable statute to the finder of fact as the basis for its finding of guilt or innocence in this case.[8] See *Medley* v. *Mogelnicki*, 170 Conn. 583, 587, 368 A.2d 60 (1976); *Lutkus* v. *Kelly*, 170 Conn. 252, 258, 365 A.2d 816 (1976); *Angelino* v. *Hersey*, 147 Conn. 638, 640, 165 A.2d 152 (1960).

"[T]he process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . As with any issue of statutory interpretation, our initial guide is the language of the statute itself. . . . Furthermore, we interpret statutory language in light of the purpose and policy behind the enactment. . . . Finally, in seeking to ascertain the intent of the legislature regarding the proper construction of [a statute], we are guided by the golden rule of statutory interpretation . . . that the legislature is presumed to have intended

---

[7] It is true that the defendant did not make this claim in the trial court. More to the point, he provides sparse analysis on appeal of his claim that the Meriden parking regulations supersede § 14-251.

[8] If this court were to conclude in favor of the defendant that the statute does not apply, the trial court would have committed plain error, which would be reviewable by this court. See *State* v. *Thornton*, 55 Conn. App. 28, 31, 739 A.2d 271 (1999).

a reasonable, just and constitutional result." (Internal quotation marks omitted.) *Kulig* v. *Crown Supermarket*, 250 Conn. 603, 607–608, 738 A.2d 613 (1999).

"We are required to construe a statute in a manner that will not thwart [the legislature's] intended purpose or lead to absurd results. . . . We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." (Internal quotation marks omitted.) *State* v. *Ehlers*, 252 Conn. 579, 593, 750 A.2d 1079 (2000). The interpretation that the defendant would have us apply to § 14-251, i.e., that it is superseded by the parking regulations in the Meriden City Code, would lead to an absurd result.

The burden of proving that the Meriden parking regulations supersede the relevant statute is on the proponent of that claim. See *State* v. *Radzvilowicz*, 47 Conn. App. 1, 36, 703 A.2d 767, cert. denied, 243 Conn. 955, 704 A.2d 806 (1997). The only authority that the defendant cites to support his superseding local ordinance claim is a 1950 opinion issued by the attorney general. See Opinions, Conn. Atty. Gen. No. 50-94 (March 9, 1950). An examination of the Meriden code reveals, however, that there is no language regarding stopping or parking in such a way as would "constitute a traffic hazard or obstruct the free movement of traffic," as stated in § 14-251. We recognize that the Meriden code addresses other aspects of parking, but it does not specifically address that portion of § 14-251 with which the defendant was charged. Therefore, the Meriden code does not supersede § 14-251 because it does not include, as permitted by § 14-251, any provision concerning any vehicle remaining "stationary within the limits of a public highway in such a manner as to constitute a traffic hazard or obstruct the free movement of traffic thereon

. . . .["9] General Statutes § 14-251. Any other interpretation of this statute would produce absurd and bizarre results because, as the state suggests, it would render § 14-251 inoperative against any generally pertinent municipal ordinance. We therefore conclude that § 14-251 applies in the absence of any superseding provision of the Meriden code.

## B

The defendant claims next that even if § 14-251 does apply in Meriden, there was insufficient evidence for the court to determine that he violated the statute. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . .

"While the [trier of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [trier] to conclude that a basic fact or an inferred fact is true, the [trier] is permitted to consider the fact proven and may con-

[9] If the Meriden code did address the circumstance of any vehicle remaining "stationary . . . in such a manner as to constitute a traffic hazard or obstruct the free movement of traffic," the defendant should have been charged under that provision.

sider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, [i]n evaluating evidence that could yield contrary inferences, the [trier of fact] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [trier of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 489–90, 698 A.2d 898 (1997).

It is well established that "[t]his court cannot substitute its own judgment for that of the [trier of fact] if there is sufficient evidence to support the [trier's] verdict. . . . Accordingly, [w]e do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the [trier's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . Finally, [i]n reviewing the. . . verdict, it is well to remember that [triers of fact] are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions

correct. . . . [S]ee also *State* v. *Zayas*, 195 Conn. 611, 620, 490 A.2d 68 (1985) ([i]t is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom)." (Citations omitted; internal quotation marks omitted.) *State* v. *Torres*, supra, 242 Conn. 490–91.

The defendant argues that he stopped his vehicle only to pick up a passenger and that he did not shut off the motor or leave his vehicle at any time. He claims further that the evidence failed to show that he actually "parked" his vehicle at any time. Pursuant to General Statutes § 14-297 (4), "parking" is defined as "the standing of a vehicle, whether occupied or not, on a highway, except it shall not include the temporary standing of a vehicle for the purpose of and while engaged in receiving or discharging passengers . . . ." Section 14-251, however, merely uses the term "parking" in its title. "While the title of [a statute] may be considered . . . it is not conclusive, and it is of little importance compared with the text." (Citations omitted.) *Hartford Electric Light Co.* v. *Water Resources Commission*, 162 Conn. 89, 98, 291 A.2d 721 (1971). The specific provision of § 14-251 at issue in this case provides: "No vehicle shall be permitted to remain stationary . . . in such a manner as to constitute a traffic hazard or obstruct the free movement of traffic . . . ." According to Williams' testimony, the defendant's vehicle was stopped in the middle of the road, even though there was another vehicle directly behind him. Furthermore, the defendant's vehicle was in that position long enough to cause the vehicle immediately to its rear to go around the defendant's vehicle by crossing the double yellow lines. By obstructing the free flow of traffic, the defendant created a situation that could have caused an accident.

In announcing its decision, the court found Williams' testimony to be credible and further stated that because the defendant kept his vehicle stationary long enough

to require the other vehicle to go around the defendant's vehicle, he could not avail himself of the protection that § 14-297 (4) affords for picking up and discharging passengers. We conclude that it was reasonable for the court to not only find Williams' testimony credible, but also to find that there was sufficient evidence to support the determination that the defendant violated § 14-251.

## II

The defendant's final claim is that the court improperly found him guilty of not signaling when he was planning to stop his vehicle on the highway in violation of § 14-244. We disagree.

The defendant claims that Williams could not have seen him signal because the defendant already was stopped when Williams arrived and that the defendant therefore should not have received a summons. Furthermore, the defendant maintains that because Williams did not see him until he already was stopped, the fact that his brake lights were functioning properly should have been enough of a signal to Williams that he was stopped. The defendant, however, admitted during trial that he did not signal when he was planning to stop, as required by § 14-244. In deciding that the defendant was guilty of violating § 14-244, the court acknowledged that the evidence showed that Williams had not seen the defendant's vehicle come to a stop. The defendant's admission that he did not signal, however, was the basis for the court's decision.

"Our standard of review is well established. In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . A factual finding may be rejected by this court only if it is clearly erroneous. . . . A finding of fact is

clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Weyel* v. *Catania*, 52 Conn. App. 292, 295, 728 A.2d 512, cert. denied, 248 Conn. 922, 733 A.2d 846 (1999).

It is clear that the court used the defendant's admission that he did not signal his stop to reach its conclusion that he violated § 14-244. The defendant claims, however, that he never admitted to not signaling. He claims that when the state asked, "Did you signal?" to which the defendant responded, "No," he believed that the state was asking if he signaled the passenger to enter his vehicle. This argument is not persuasive.

Again, "[i]n considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." *State* v. *Sandra O.*, 51 Conn. App. 463, 468, 724 A.2d 1127 (1999). The record is rife with the word "signal," and its usage always was in reference to the operation of the defendant's vehicle.

In our view, the court acted properly in treating the defendant's admission as the basis for finding him guilty of the charge under § 14-244. We cannot say, as a matter of law, that the trial court's conclusion was, in accordance with the principles already set out, clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.