## VINCENT NASTRO *v.* ARTHUR M. D'ONOFRIO, JR.
### (AC 22941)

Dranginis, Bishop and Peters, Js.

Argued March 27—officially released May 20, 2003

*Gary J. Greene,* for the appellant (defendant).

*Edwin L. Doernberger,* for the appellee (plaintiff).

*Opinion*

PETERS, J. The full faith and credit clause of the United States constitution "requires a state court to accord to the judgment of another state the same credit, validity and effect as the state that rendered the judgment would give it." *Packer Plastics, Inc.* v. *Laundon,* 214 Conn. 52, 56, 570 A.2d 687 (1990). In accordance with this federal mandate, our legislature enacted the Uniform Enforcement of Foreign Judgments Act, General Statutes § 52-604 et seq. (foreign judgments act),

which permits an out-of-state judgment that has been filed here to be enforced in the same manner as an in-state judgment. In that act, General Statutes § 52-605 (b) provides that enforcement of the out-of-state judgment is subject to the same defenses that a judgment debtor could raise against an in-state judgment. This case requires us to interpret this section so that it does not run afoul of the full faith and credit clause, which limits the authority of Connecticut courts to delve into the merits of an out-of-state judgment. The judgment of the trial court in favor of the out-of-state creditor, although based on a different statute, reached a result that comports with our interpretation of § 52-605 (b). We therefore affirm the judgment.

The procedural history of this case begins in California in the Superior Court in and for the County of San Joaquin. In that court, the plaintiff, Vincent Nastro, filed a complaint seeking damages to compensate him for alleged misconduct by the defendant, Arthur M. D'Onofrio, Jr., in the management of a corporation jointly owned by both parties. In the course of those proceedings, the defendant was ordered to comply with certain discovery orders. On January 22, 1998, after he had failed to do so, the court issued discovery sanctions that directed the defendant to pay monetary sanctions of $16,923.87. The defendant was represented by counsel throughout. The judgment was on the merits rather than by default or confession of judgment.

As California law permits,[1] the defendant immediately appealed the sanctions order to the California Court of Appeals. The sanctions order was not stayed during the pendency of the appeal. On November 16, 1999, the California appellate court dismissed the defendant's appeal because of his failure to file an opening brief.[2]

---

[1] See California Code of Civil Procedure, title 13, § 903.1 (11).

[2] At oral argument, counsel for the plaintiff informed us that, in June, 2001, the California Superior Court rendered a final judgment on the merits

A Connecticut court clerk's certificate attests to the filing of the California judgment in this state on April 19, 2000. As a result, the California order for sanctions in the amount of $16,923.87 became a Connecticut judgment. Thereafter, on May 16, 2000, the plaintiff filed and recorded two certificates of judgment lien against Connecticut property owned by the defendant.

On November 5, 2001, the defendant filed a motion in the Superior Court in this state in which he asked the court to vacate the California judgment because of ambiguity in the designation of the payee. That judgment ordered the defendant to pay the sanctions award "to counsel for Plaintiff." The defendant argued that he was at risk of having to pay the judgment twice, once to the plaintiff himself and once to the plaintiff's counsel. On this ground, the defendant also moved for a stay of collection proceedings and for discharge of the judgment liens.

On December 10, 2001, the trial court held a hearing for the presentation of argument by counsel on the merits of the defendant's motions. To resolve the ambiguity that the defendant had raised, the court ordered the plaintiff to provide a written submission to the court about the person to whom the defendant was required to pay the sanctions award. In response, the plaintiff filed a California abstract of judgment, dated March 6, 2000, which certified that Vincent Nastro was the judgment creditor and Arthur M. D'Onofrio was the judgment debtor for the judgment entered on January 22, 1998.

On March 25, 2002, the trial court denied the motions filed by the defendant. Its memorandum of decision

---

of the underlying case in favor of the plaintiff. The judgment did not address the issue of sanctions for failure to comply with discovery orders. The judgment on the merits is now on appeal to the California Court of Appeals but apparently has not yet been decided.

stated: "After reviewing the parties' submissions and considering their oral arguments, the motion to stay collection proceedings and discharge judgment liens is denied. The court notes that, in his memorandum, dated Jan. 9, 2002, the defendant, Arthur D'Onofrio, Jr., stated, at page two, that he 'does not now ask the Court to reopen the judgment . . . .' Accordingly, the motion to vacate judgment is deemed withdrawn." The court, thereafter, rendered its judgment in favor of the plaintiff.

The defendant has appealed to challenge the validity of the judgment against him. He does not challenge the factual record that the plaintiff presented to the trial court. Nonetheless, in the defendant's view, the trial court had broad discretion to order a stay in this case because it had broad discretion to grant a stay of a Connecticut judgment. *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 196 Conn. 451, 455, 493 A.2d 229 (1985); *Sauter* v. *Sauter,* 4 Conn. App. 581, 584–85, 495 A.2d 1116 (1985). Implicitly, the defendant's argument relies on § 52-605 (b), which, on its face, permits an out-of-state judgment debtor to defend against an out-of-state judgment for the same reasons that an in-state judgment debtor can defend against an in-state judgment.[3]

In response, the plaintiff maintains that uncontested facts of record demonstrate that a stay is not warranted because the California judgment is not ambiguous. The plaintiff does not challenge the authority of the trial court to adjudicate this issue on its merits. Indeed, he does not refer to the foreign judgments act in any way.

Nonetheless, we are persuaded that the foreign judgments act is central to the judgment in this case. Without

---

[3] The defendant also contests the trial court's finding that he had withdrawn his motion to vacate or to open the California judgment. We can find nothing in the record to contradict the court's factual finding. This argument is, therefore, unpersuasive.

that act, the California judgment would not have become a judgment in this state. Without that act, the plaintiff would have had to undertake further proceedings before placing liens on the defendant's property. We must decide, therefore, whether the judgment rendered by the trial court comports with the requirements of the act. Because these requirements relate to "foreign judgments," we must take into account not only the wording of the act but also the commands of federal constitutional law. Federal constitutional law requires the courts of this state to give full faith and credit to the judgment of a foreign state.

The underlying issue in this appeal, therefore, is the proper interpretation of § 52-605 (b) of the foreign judgments act, which subjects a foreign judgment to the same procedures, defenses and proceedings for reopening, vacating or staying a judgment as would apply to a judgment of this state. Statutory interpretation is a matter of law over which this court's review is plenary. *Spears* v. *Garcia*, 263 Conn. 22, 27, 818 A.2d 37 (2003); *Millward Brown, Inc.* v. *Commissioner of Revenue Services*, 73 Conn. App. 757, 761, 811 A.2d 717 (2002).

I

We begin with an examination of the constitution of the United States, article four, § 1, which requires that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State . . . ." Interpretation of the full faith and credit clause is a question of federal law. State courts are bound by the decisions of the United States Supreme Court that prescribe the criteria for applying the clause. *Thomas* v. *Washington Gas Light Co.*, 448 U.S. 261, 271 n.15, 100 S. Ct. 2647, 65 L. Ed. 2d 757 (1980).

The Supreme Court has spoken at length about the origins and the purpose of the full faith and credit

clause. "The full faith and credit clause is one of the provisions incorporated into the Constitution by its framers for the purpose of transforming an aggregation of independent, sovereign States into a nation." *Sherrer* v. *Sherrer*, 334 U.S. 343, 355, 68 S. Ct. 1087, 92 L. Ed. 1429 (1948); see also *Estin* v. *Estin*, 334 U.S. 541, 546, 68 S. Ct. 1213, 92 L. Ed. 1561 (1948). Its animating purpose "was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin." (Internal quotation marks omitted.) *Baker* v. *General Motors Corp.*, 522 U.S. 222, 232, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998).

Substantively, the full faith and credit clause imposes significant limitations on the authority of a court in this state to decline to enforce an out-of-state money judgment. That judgment may be set aside if it is jurisdictionally flawed because the foreign court lacked subject matter or personal jurisdiction over the defendant or if that jurisdiction resulted from an extrinsic fraud. *Underwriters National Assurance Co.* v. *North Carolina Life & Accident & Health Ins. Guaranty Assn.*, 455 U.S. 691, 705, 102 S. Ct. 1357, 71 L. Ed. 2d 558 (1982). Even as to questions of jurisdiction, however, the principles of res judicata bar further inquiry if "those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." (Internal quotation marks omitted.) Id., 706. The out-of-state judgment may not be impeached because of mistake or fraud; *Wisconsin* v. *Pelican Ins. Co.*, 127 U.S. 265, 291–92, 8 S. Ct. 1370, 32 L. Ed. 239 (1888); *Smith* v. *Smith*, 174 Conn. 434, 437, 389 A.2d 756 (1978); or for reasons of public policy. *Baker* v. *General Motors*

*Corp.*, supra, 522 U.S. 233; *Fauntleroy* v. *Lum*, 210 U.S. 230, 237, 28 S. Ct. 641, 52 L. Ed. 1039 (1908).

By contrast, the full faith and credit clause does not impose procedural constraints on the time and manner in which an out-of-state judgment is enforceable in the courts of this state. "Enforcement measures do not travel with the sister state judgment as preclusive effects do; such measures remain subject to the even-handed control of forum law." *Baker* v. *General Motors Corp.*, supra, 522 U.S. 235; see also Restatement (Second), Conflict of Laws § 99, pp. 303–304 (1971).

## II

We turn now to application of the law of full faith and credit to our statute specifying the time and manner of in-state enforcement of out-of-state judgments. General Statutes § 52-605 (b), which is a part of the foreign judgments act, provides in relevant part that, once properly registered, a "foreign judgment shall be treated in the same manner as a judgment of a court of this state. A judgment so filed has the same effect and is subject to *the same* procedures, *defenses* and proceedings for reopening, vacating or staying as a judgment of a court of this state and may be enforced or satisfied in like manner." (Emphasis added.) Under the law of this state, judgments may be opened or stayed for a variety of reasons, including fraud, mistake, duress or as "otherwise provided by law . . . ." General Statutes § 52-212a;[4] Practice Book § 17-4 (a);[5] *Kim* v. *Magnotta*, 249

---

[4] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."

[5] Practice Book § 17-4 (a) provides: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. The parties may waive the provisions of this subsection or otherwise submit to the jurisdiction of the court."

Conn. 94, 104, 733 A.2d 809 (1999). Indeed, for a four month period immediately following the rendition of a judgment, "[o]ur courts have the inherent authority to open, correct or modify judgments . . . ." *Ziruk* v. *Bedard*, 45 Conn. App. 137, 138, 695 A.2d 4, cert. denied, 243 Conn. 905, 701 A.2d 339 (1997).

Juxtaposition of these two statutes demonstrates the need to find an accommodation between them. Read literally, § 52-605 (b) subjects an out-of-state judgment to substantive defenses that are precluded by the full faith and credit clause. We must search for an interpretation of this statute that avoids placing it in such constitutional jeopardy. *State* v. *Metz*, 230 Conn. 400, 422–23, 645 A.2d 965 (1994); *State* v. *Coscuna*, 59 Conn. App. 434, 439–40, 757 A.2d 659 (2000).

We follow the method of statutory interpretation recently articulated in *State* v. *Courchesne*, 262 Conn. 537, 816 A.2d 562 (2003). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule." (Citations omitted; internal quotation marks omitted.) Id., 577.

The foreign judgments act provides its own statement of the purpose that the act was intended to serve. The

prefatory note to the act states that it was intended to provide "the enacting state with a speedy and economical method of doing that which it is required to do by the Constitution of the United States. It also relieves creditors and debtors of the additional cost and harassment of further litigation which would otherwise be incident to the enforcement of a foreign judgment." Uniform Enforcement of Foreign Judgments Act, 13 U.L.A. 157 (2002).

Even more to the point, numerous state courts have held that the foreign judgments act was intended to implement the full faith and credit clause and must be interpreted accordingly. The purpose of the foreign judgments act is to "facilitate interstate enforcements of judgments by providing a summary procedure by which a judgment creditor may enforce the judgment in an expeditious manner in any jurisdiction in which the judgment debtor is found." *Matson* v. *Matson*, 333 N.W.2d 862, 867 (Minn. 1983). Except for defenses such as lack of personal or subject matter jurisdiction in the out-of-state court or fraud in the procurement of the out-of-state judgment, the foreign judgments act therefore "does not allow the merits of a foreign judgment to be reopened or reexamined by the state where it is recorded." (Internal quotation marks omitted.) *Carr* v. *Bett*, 291 Mont. 326, 339, 970 P.2d 1017 (1998); see also *Marworth, Inc.* v. *McGuire*, 810 P.2d 653, 656–57 (Colo. 1991); *Matson* v. *Matson*, supra, 867; *Rosenstein* v. *Steele*, 103 Nev. 571, 573, 747 P.2d 230 (1987); *Conglis* v. *Radcliffe*, 119 N.M. 287, 289, 889 P.2d 1209 (1995); *Everson* v. *Everson*, 494 Pa. 348, 361–62, 431 A.2d 889 (1981); *Wooster* v. *Wooster*, 399 N.W.2d 330, 333–34 (S.D. 1987); *Data Management Systems, Inc.* v. *EDP Corp.*, 709 P.2d 377, 381 (Utah 1985); *Sandstrom* v. *Sandstrom*, 880 P.2d 103, 106 (Wyo. 1994). These out-of-state precedents are particularly persuasive because the foreign

judgments acts they interpret are textually identical with our own. See General Statutes § 52-608.[6]

It is our responsibility, therefore, to find a way to reconcile the sweeping language of § 52-605 (b) with the purpose that the uniform act was intended to serve. This is an issue of first impression in this state. We are persuaded that we should follow the decisions of courts in other states that have considered this problem. These courts have added a limiting gloss to the word "defenses" by holding that the foreign judgments act permits a judgment debtor to raise only those defenses that are constitutionally permissible. Constitutionally permissible defenses are those that "destroy the full faith and credit obligation owed to a foreign judgment— viz., the absence of jurisdiction or the lack of due process . . . ." *Everson* v. *Everson*, supra, 494 Pa. 361–62; see also *Conglis* v. *Radcliffe*, supra, 119 N.M. 289. "To interpret the language of our statute otherwise would not afford any finality to foreign judgments and would be contrary to the constitutional mandate." *Data Management Systems, Inc.* v. *EDP Corp.*, supra, 709 P.2d 381.

Following these precedents, we conclude that the phrase in § 52-605 (b) that provides that a foreign judgment, once registered, "has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of a court of this state" is not an open sesame for Connecticut courts to reconsider the merits of an out-of-state judgment. To comply with federal constitutional law, the only defenses that a Connecticut court should consider when out-of-state judgment debtors claim that an out-of-state judgment is unenforceable are those that

[6] General Statutes § 52-608 provides: "Uniform interpretation. Sections 52-604 to 52-609, inclusive, shall be so construed as to effectuate their general purpose to make uniform the laws of those states which enact them."

implicate the personal or subject matter jurisdiction of the out-of-state court. Accordingly, the provisions of § 52-212a, which prescribe rules for the opening of Connecticut judgments, have only limited effect on out-of-state judgments.[7]

The trial court's resolution of the defendant's challenge to the validity of the California sanctions judgment in this case is entirely consonant with the foreign judgments act as we have interpreted it. The defendant did not establish *any* basis for a stay of the California judgment in favor of the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] It may be that substantively appropriate jurisdictional issues must be raised in this state within four months of the time that an out-of-state judgment is filed here. We need not decide that issue today.