IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

FRANCIS A. COCCHIA, *Plaintiff/Appellant*,

*v.*

ROBERT J. TESTA, TRUSTEE OF THE KAREN M. TESTA
SEPARATE PROPERTY TRUST, *Defendant/Appellee*.[1]

No. 1 CA-CV 22-0571
FILED 9-12-2023

---

Appeal from the Superior Court in Maricopa County
No. CV2019-013395
The Honorable Mary Collins Cronin, Judge *pro tempore*

**VACATED**

---

COUNSEL

David T. Bonfiglio, P.C., Scottsdale
By David T. Bonfiglio
*Counsel for Plaintiff/Appellant*

Maynard Cronin Erickson Curran & Reiter, P.L.C., Phoenix
By Douglas C. Erickson
*Counsel for Defendant/Appellee*

---

[1]    It is ordered amending the caption as reflected above.  This caption
shall be used on all further documents filed in this appeal.

_____

**OPINION**

Judge Michael S. Catlett delivered the opinion of the Court, in which Presiding Judge Paul J. McMurdie joined and Judge Michael J. Brown specially concurred.

_____

**C A T L E T T**, Judge:

**¶1**　　　　This case involves two anxiety-causing topics for civil procedure students: preclusion and personal jurisdiction. Francis A. Cocchia ("Judgment Creditor") brought a Connecticut judgment to Arizona for enforcement against Robert J. Testa ("Trustee"), in his capacity as trustee of the Karen M. Testa Separate Property Trust (the "Trust"). Trustee moved to preclude enforcement, claiming Connecticut lacked personal jurisdiction. Judgment Creditor responded, in part, that Trustee was precluded from disputing personal jurisdiction because he litigated that issue in Connecticut and lost. Trustee replied that, while he unsuccessfully litigated service of process in Connecticut, he had not litigated minimum contacts (what he calls "substantive personal jurisdiction") and thus that issue remained fair game. The superior court agreed with Trustee and deemed the Connecticut judgment unenforceable.

**¶2**　　　　We view things differently. We first explain why the doctrine of issue preclusion, and not claim preclusion, governs whether Trustee is foreclosed from further litigating personal jurisdiction. Applying Connecticut law, we then conclude that issue preclusion bars Trustee from further disputing personal jurisdiction. While Trustee could have litigated Connecticut's personal jurisdiction entirely in Arizona, once Trustee showed up in Connecticut to challenge personal jurisdiction on one ground, he had to challenge personal jurisdiction on all grounds—in for a penny, in for a pound. We, therefore, vacate the superior court's order finding the Connecticut judgment unenforceable.

**FACTS AND PROCEDURAL BACKGROUND**

**¶3**　　　　Bouncing back and forth between the Connecticut and Arizona judicial systems, this case has a tortuous history. We recount only those facts pertinent to our present purposes, but additional detail is available elsewhere. *See Cocchia v. Testa*, 2021 WL 922435 (Ariz. App. Mar.

11, 2021) (mem. decision) (*Cocchia I*); *Cocchia v. Testa*, 261 A.3d 90, 94–97 (Conn. App. Ct. 2021) (*Cocchia II*).

¶4　　　　　We begin in Connecticut in 2016.  Judgment Creditor filed a breach of contract claim in Connecticut superior court against Trustee's father.  Tragically, a year later, Trustee's parents passed away.  Trustee then became trustee of the Trust.  Ten months later, Judgment Creditor sought to amend the Connecticut complaint to allege Trustee's father had fraudulently conveyed an Arizona residence to the Trust.

¶5　　　　　Meanwhile, here in Arizona, Judgment Creditor filed a new action in Maricopa County Superior Court against, among others, the Trust for breach of contract and fraudulent conveyance.  With the litigation still pending in Connecticut, however, the parties stipulated to stay the Arizona action.

¶6　　　　　About the same time, Judgment Creditor asked the Connecticut superior court to substitute Trustee as a party.  The Connecticut court agreed, and Judgment Creditor filed an amended complaint to add a fraudulent conveyance claim against Trustee.  The Connecticut court then found Trustee failed to appear and "a default for failure to appear was entered."  The court entered judgment for Judgment Creditor, awarding him $206,348 and finding the transfer of the Arizona residence to the Trust "was fraudulent as to [Judgment Creditor]."

¶7　　　　　Judgment Creditor then brought the Connecticut judgment to Arizona and sought domestication and enforcement.  Trustee responded with a motion to set aside the judgment for lack of personal jurisdiction.  The superior court denied Trustee's motion; he appealed.  *See Cocchia I*, 2021 WL 922435 at *2.  This Court vacated the superior court's order and remanded for "further proceedings following final resolution of the Connecticut appeal."  *Id.* at *3 ¶¶ 20–21.  Anticipating the issues we now confront, this Court explained that "[i]t will be for the superior court in the first instance to determine the extent to which [Trustee] and the Trust have litigated jurisdiction in Connecticut and the impact, if any, of *res judicata* in this case."  *Id.*

¶8　　　　　Back in Connecticut, Trustee challenged the judgment there on two fronts.  Trustee filed (1) a motion to open, set aside and vacate judgment, and (2) a motion to dismiss.  Trustee argued, in part, that Connecticut lacked personal jurisdiction because he was improperly added to the case and not properly served.  Trustee specifically argued in the motion to dismiss that Judgment Creditor "never established personal

3

jurisdiction . . . over [Trustee]" and "the Court lacks . . . personal jurisdiction and this action must be dismissed." The Connecticut court denied the motions, explaining that substituting Trustee as a party was appropriate, Trustee was properly served in Arizona, and entry of the default judgment against Trustee was sound.

¶9 Trustee appealed to the Connecticut Court of Appeals. Trustee's only argument on appeal was that "the trial court erred when it improperly denied the defendant's motion to dismiss because the court never had personal jurisdiction over the defendant." The Connecticut Court of Appeals affirmed, concluding that "[b]ecause the [superior] court granted that motion and the trustee was subsequently served with the operative complaint, the court had personal jurisdiction over him." *Cocchia II*, 261 A.3d at 97.

¶10 Back to Arizona one last time. In the wake of his unsuccessful appeal in Connecticut, Trustee filed a new motion to set aside the Connecticut judgment under Arizona Rule of Civil Procedure 60. Trustee asserted that the Connecticut judgment was void for lack of personal jurisdiction. Trustee claimed he could still object on that ground because the Connecticut courts "did not decide substantive or constitutional personal jurisdiction," which he elected to challenge in Arizona instead. Judgment Creditor objected that Trustee could no longer collaterally attack the judgment following the Connecticut courts' rejection of Trustee's personal jurisdiction defense.

¶11 The superior court granted Trustee's Rule 60 motion. The court concluded the Connecticut judgment was void because Connecticut's long-arm statute did not authorize personal jurisdiction over Trustee. Even if the long-arm statute authorized personal jurisdiction, the court thought Connecticut's exercise of such jurisdiction "would violate constitutional principles of due process." And the court believed personal jurisdiction, based on those grounds, was not litigated in Connecticut.

¶12 Judgment Creditor timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶13 Judgment Creditor argues Arizona courts must recognize the Connecticut judgment because Trustee unsuccessfully litigated his personal jurisdiction defense in Connecticut. We review a court's Rule 60 ruling on a motion to set aside a foreign judgment and preclude its enforcement for an abuse of discretion. *See City of Phoenix v. Geyler*, 144

Ariz. 323, 328 (1985). An abuse of discretion occurs when the trial court misapplies the law. *Id.* at 328–29. We review the application of full faith and credit and preclusion principles *de novo*. *Grynberg v. Shaffer*, 216 Ariz. 256, 257 ¶ 5 (App. 2007) (reviewing full faith and credit issue *de novo*); *Banner Univ. Med. Ctr. Tucson Campus, LLC v. Gordon*, 252 Ariz. 264, 266 ¶ 8 (2022) (reviewing issue and claim preclusion issues *de novo*).

## I.

¶14        The Full Faith and Credit Clause of the United States Constitution provides in pertinent part: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. The Clause "obliges the states to respect and enforce judgments rendered in the courts of their sister states[.]" *Oyakawa v. Gillett*, 175 Ariz. 226, 228 (App. 1993). The Clause also provides that "Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const. art. IV, § 1. Since 1790, Congress has directed, with only minor revision, that judgments "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738.

¶15        The Arizona legislature also plays a role in carrying out the Full Faith and Credit Clause. In 1971, the legislature adopted, in its entirety, § 2 of the Uniform Enforcement of Foreign Judgments Act. Codified at A.R.S. § 12-1702, the statute provides that an authenticated copy of a foreign judgment (*i.e.*, from a non-Arizona court) may be filed with the clerk of the court in any county. Once that occurs, "[t]he clerk shall treat the foreign judgment in the same manner as a judgment of the superior court of this state." A.R.S. § 12-1702. And the statute emphasizes that it means what it says about requiring the same treatment: "A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a superior court of this state and may be enforced or satisfied in like manner." *Id.*

## A.

¶16        The Full Faith and Credit Clause "obliges the states to respect and enforce judgments rendered in the courts of their sister states[.]" *Oyakawa*, 175 Ariz. at 228. This Court once explained that "the Clause was intended to nationalize the law of *res judicata*." *Giehrl v. Royal Aloha Vacation Club, Inc.*, 188 Ariz. 456, 457 (App. 1997).

¶17 The term *res judicata*, however, has confusingly been used in more than one sense. Sometimes "[r]es judicata was used to mean an adjudication that bars any further litigation on a claim." *Circle K Corp. v. Indus. Comm'n*, 179 Ariz. 422, 426 (App. 1993). In more modern parlance, this use of *res judicata* refers to claim preclusion. Other times *res judicata* was used more broadly to also "refer to the resolution of an issue, a facet of a claim, which bars further litigation of that issue." *Id.* This concept is now referred to as issue preclusion. Using *res judicata* in two different ways "blurred the distinction between issue and claim preclusion when . . . preclusion is sought on an issue essential to a prior claim which was resolved by default, not litigation." *Id.*

¶18 When *Giehrl* and other cases addressing the Full Faith and Credit Clause talk about nationalizing *res judicata*, it seems they are referring to *res judicata* in the broad sense—the sense that includes claim *and* issue preclusion. In any event, the doctrine of collateral estoppel is "an adjunct of the law of res judicata." *State v. Forteson*, 8 Ariz. App. 468, 472 (1968). And the Arizona Supreme Court has held that the Full Faith and Credit Clause also federalizes collateral estoppel when a litigant seeks to enforce a sister state's judgment. *Fremont Indem. Co. v. Indus. Comm'n*, 144 Ariz. 339, 342 (1985) ("Although the Court of Appeals correctly noted that the issue in this case is really one of collateral estoppel, the Full Faith and Credit Clause also encompasses that doctrine."); *In re Macartney*, 163 Ariz. 116, 118 (1990) ("The effect of the full faith and credit clause is to nationalize the doctrines of *res judicata* and collateral estoppel."). We will refer herein, however, to claim preclusion (instead of *res judicata)* and issue preclusion (instead of collateral estoppel). *See Circle K Corp.*, 179 Ariz. at 645 (endorsing "the use of the descriptive terms 'claim preclusion' and 'issue preclusion' instead of the archaic phrases 'res judicata' and 'collateral estoppel.'").

## B.

¶19 Although the default rule is that a state should respect and enforce judgments from sister states, there are exceptions. As Justice Robert Jackson explained, "A money judgment in the usual civil action, if it survives inquiry into jurisdiction of the rendering tribunal, is unimpeachable in a sister state, either as a basis for a judgment of its courts or as a shield against further litigation of the same issues by the same parties." Robert H. Jackson, *Full Faith and Credit—The Lawyer's Clause of the Constitution*, 45 Colum. L. Rev. 1, 10 (1945). Justice Jackson acknowledged, "Exceptions there are, but they are few and affect only a small number of judgments[.]" *Id.* As Justice Jackson's statement implies, one ground upon

which a party may challenge the enforceability of a foreign judgment is lack of jurisdiction. *See id.* ("if it survives inquiry into jurisdiction of the rendering tribunal"); *see also Phares v. Nutter*, 125 Ariz. 291, 294 (1980) ("[T]he Full Faith and Credit Clause of the United States Constitution does not prevent a judgment debtor from collaterally attacking a foreign judgment on the grounds of fraud or want of jurisdiction.").

¶20 More specifically, "a sister state need not give effect to a judgment that was rendered without jurisdiction over the defendant." *Giehrl*, 188 Ariz. at 457. Thus, one seeking to avoid enforcement of a foreign judgment in Arizona can do so by convincing the superior court that the issuing state lacked personal jurisdiction. "A duly authenticated judgment of a sister state is prima facie evidence of that state's jurisdiction to render it and of the right which it purports to adjudicate." *Oyakawa*, 175 Ariz. at 229. Thus, a party challenging the validity of the foreign judgment bears the burden of proof. *Id.* "If the judgment is void for lack of jurisdiction the court has no . . . discretion but must vacate the judgment." *Preston v. Denkins*, 94 Ariz. 214, 219 (1963).

¶21 A defendant named in a foreign lawsuit who believes the forum state lacks personal jurisdiction faces a choice. The defendant may appear in the litigation in the foreign state and challenge the court's jurisdiction. *See Giehrl*, 188 Ariz. at 458. If the defendant does so and loses, the defendant does not get a second bite by again challenging jurisdiction when the plaintiff later attempts to enforce the judgment. *Id.* As the U.S. Supreme Court has explained, "[A] judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Underwriters Nat'l Assurance Co. v. N.C. Life & Acc. & Health Ins. Guaranty Ass'n*, 455 U.S. 691, 706 (1982) (citation omitted). Full faith and credit will lie even where the issue of jurisdiction "may have been determined incorrectly." *Giehrl*, 188 Ariz. at 458.

¶22 Alternatively, the defendant can ignore the foreign lawsuit and let default judgment enter. *Id.* at 458. Then, when the plaintiff comes to enforce the judgment in Arizona, full faith and credit likely will stop the defendant from re-litigating the underlying merits of the claims, but it will not stop the defendant from questioning the issuing court's personal jurisdiction or the superior court from concluding the judgment is void for lack of personal jurisdiction. *Id.*

**C.**

**¶23** Saying a defendant can appear and challenge a foreign court's jurisdiction (option 1) or make that challenge later upon attempted enforcement of a default judgment (option 2) gets us only part of the way home. We must also determine whether, when a defendant chooses option 1 and the court finds personal jurisdiction, that determination is subject to claim or issue preclusion. We conclude issue preclusion applies.

**¶24** As this Court has explained, "[c]laim preclusion, as traditionally applied in civil litigation, means that 'a final judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same claim.'" *Lawrence T. v. Dep't of Child Safety*, 246 Ariz. 260, 261 ¶ 8 (App. 2019). Claim preclusion requires "(1) an identity of claims in the suit in which a judgment was entered and the current litigation, (2) a final judgment on the merits in the previous litigation, and (3) identity or privity between parties in the two suits." *In re Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source*, 212 Ariz. 64, 69–70 ¶ 14 (2006) ("*In re Gila River Adjudication*"). "A final judgment on the merits for the purpose of claim preclusion is one that is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court." *Lawrence T.*, 246 Ariz. at 262 ¶ 11. Claim preclusion, unlike issue preclusion, does not require actual litigation. *Circle K Corp.*, 179 Ariz. at 425 ("Issue preclusion requires actual litigation. Claim preclusion does not.").

**¶25** "Issue preclusion is a judicial doctrine that prevents a party from relitigating issues of fact or law." *Legacy Found. Action Fund v. Citizens Clean Elections Comm'n*, 254 Ariz. 485, __ ¶ 24 (2023). A party using defensive issue preclusion must satisfy four requirements: "(1) the issue at stake is the same in both proceedings; (2) the issue was actually litigated and determined in a valid and final judgment issued by a tribunal with competent jurisdiction; (3) the opposing party had a full and fair opportunity to litigate the issue and actually did so; and (4) the issue was essential to the judgment." *Id.* Issue preclusion, therefore, does not apply "[i]n the case of a judgment entered by confession, consent, or default" because there "none of the issues [are] actually litigated." *In re Gila River Adjudication*, 212 Ariz. at 70 ¶ 14 n.8 (quoting *Arizona v. California*, 530 U.S. 392, 414 (2000)).

**D.**

**¶26**         Deciding where a determination of personal jurisdiction fits into the picture requires us to explain the basics of that doctrine as well. For a court to have personal jurisdiction over a defendant, there first must be valid service of process. *See MCA Fin. Grp., Ltd. v. Enter. Bank & Trust*, 236 Ariz. 490, 497 ¶ 19 n.10 (App. 2014) ("[S]ervice of process is the mechanism by which the court acquires the power to enforce a judgment."). Even with proper service, the Due Process Clause of the Fourteenth Amendment limits state courts from exercising personal jurisdiction over non-resident defendants served out of state. *Pennoyer v. Neff*, 95 U.S. 714, 723–24 (1877). The modern formulation of specific personal jurisdiction—jurisdiction over a particular claim or claims—allows state courts to exercise personal jurisdiction over a foreign defendant if the defendant has "sufficient contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specific personal jurisdiction requires "(1) purposeful conduct by the defendant targeting the forum, rather than accidental or casual contacts or those brought about by the plaintiff's unilateral acts, (2) a nexus between those contacts and the claim asserted, and (3) that exercise of jurisdiction would be reasonable." *Beverage v. Pullman & Comley, LLC*, 232 Ariz. 414, 417 ¶ 9 (App. 2013).

**E.**

**¶27**         For several reasons, a prior court's determination regarding personal jurisdiction is subject to issue preclusion, not claim preclusion. To begin, personal jurisdiction is not a cause of action one asserts to obtain relief. One cannot bring a claim against another for personal jurisdiction. Instead, in most, if not all, cases, lack of personal jurisdiction is an issue that a party injects in defense of a claim asserted by another. Admittedly, claims for relief come in many shapes and sizes, including requests for declaratory relief to resolve what in other cases would be a defense (*e.g.*, the government official who seeks a declaratory judgment that her actions are constitutional). But personal jurisdiction is not an issue a party tees up through a declaratory judgment action—it would be unheard of to ask a court to affirmatively exercise jurisdiction only to determine whether it has jurisdiction. Thus, it is more natural to treat personal jurisdiction as a subsidiary issue subject to issue preclusion.

**¶28**         Applying issue preclusion is also most consistent with how courts treat that issue in the specific context of a foreign default judgment. As explained, a defendant served with a foreign lawsuit can pursue the

ostrich's strategy, hiding his head in the sand and allowing default judgment to enter. But the defendant may still defend based on lack of personal jurisdiction when his adversary comes calling with the judgment.

¶29 The only way that framework makes sense is if personal jurisdiction is subject to issue preclusion. If personal jurisdiction is subject to claim preclusion, then re-litigation of personal jurisdiction would be impermissible because claim preclusion does not require actual litigation, instead applying to every issue that could have been litigated. *Aldrich v. Indus. Comm'n*, 176 Ariz. 301, 306 (App. 1993) ("Claim preclusion, on the other hand, applies to issues that could have been litigated."). Personal jurisdiction, like every issue bound up in a judgment obtained by default, could have been litigated had the defendant appeared and defended, and thus if claim preclusion applies, a defaulting defendant can no longer argue personal jurisdiction. If personal jurisdiction is instead subject to issue preclusion, then litigation over personal jurisdiction is permitted after default because "[i]ssue preclusion applies only if an issue was previously litigated." *Id.* Thus, because case law establishes that litigation of personal jurisdiction is permitted after default, *see Giehrl*, 188 Ariz. at 458, issue preclusion applies to personal jurisdiction.

¶30 The U.S. Supreme Court, while interpreting the Full Faith and Credit Clause, has applied issue preclusion to bind one state court (in North Carolina) to the personal jurisdiction determination from another state court (in Indiana), explaining "[e]rroneous or not . . . this jurisdictional issue was fully and fairly litigated and finally determined by [an Indiana court]." *Underwriters Nat'l Assurance Co.*, 455 U.S. at 714. Arguably, that interpretation is binding in this case, which also involves application of the Full Faith and Credit Clause. *See Titus v. Wallick*, 306 U.S. 282, 287–88 (1939) (exercising jurisdiction over a state court's Full Faith and Credit determination). Less directly, the Court has acknowledged in other contexts that a decision on personal jurisdiction may have preclusive consequences because of issue preclusion. *See Ruhrgas AG v. Marathon Oil*, 526 U.S. 574, 585 (1999) ("If a federal court dismisses a removed case for want of personal jurisdiction, that determination may preclude the parties from relitigating the very same personal jurisdiction issue in state court."); *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 524–27 (1931) (personal jurisdiction ruling has issue-preclusive effect).

¶31 Lastly, this Court has previously applied issue preclusion to the issue of personal jurisdiction. In *Tash v. Saunders*, the plaintiffs sued defendants for intentional interference with a contract. *See* 153 Ariz. 322, 324 (App. 1987). The superior court dismissed the lawsuit for lack of

personal jurisdiction. Undeterred, the plaintiffs again sued the defendants in superior court for intentional interference with a contract. *See id.* The defendants again moved to dismiss the claims for lack of personal jurisdiction and the superior court again obliged. *See id.* On appeal, this Court noted that "the dismissal in the first lawsuit determined" the personal jurisdiction issue, "and no appeal was taken from that judgment." *Id.* at 325. The issue presented, therefore, was "whether [the plaintiffs], by filing a new action 42 days later, can relitigate the same issue previously decided against them." *Id.* This Court, applying issue preclusion, held they could not. *Id.* Although this Court acknowledged a dearth of Arizona cases on point, there was "authority from other jurisdictions to the effect that a finding of lack of personal jurisdiction serves to preclude raising the issue in another lawsuit." *Id.* at 325–26 (citing cases and the Restatement (Second) of Judgments § 27 (1980)); *see also Singer v. Palmer*, 2019 WL 5444792, at *2 ¶ 10 (Ariz. App. Oct. 24, 2019) (applying issue preclusion to bar re-litigation of personal jurisdiction).

**F.**

**¶32** The judgment at issue hails from Connecticut, not Arizona. "The law of the jurisdiction of the court from which the underlying initial judgment issues determines whether that judgment has preclusive effect." *Hancock v. O'Neil*, 253 Ariz. 509, 512 ¶ 11 (2022). We must, therefore, determine whether there is any relevant conflict between Arizona and Connecticut law on issue preclusion and how it applies to personal jurisdiction.

**¶33** In every sense relevant to this appeal, Connecticut law on preclusion is consistent with Arizona law. Like in Arizona, a prior judgment has preclusive effect in Connecticut based on principles of claim and issue preclusion. *See Powell v. Infinity Ins. Co.*, 922 A.2d 1073, 1078 (Conn. 2007). "[I]ssue preclusion … prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties or those in privity with them upon a different claim." *Id.* Thus, a judgment obtained by default does not have preclusive effect when it comes to jurisdictional issues because those issues are not actually litigated. *See Packer Plastics, Inc. v. Laundon*, 570 A.2d 687, 690 (Conn. 1990) (personal jurisdiction defense may be raised "unless the jurisdictional issue was fully litigated before the rendering court"). Connecticut allows the same two options as Arizona in dealing with personal jurisdiction and foreign judgments—the defendant may appear in the issuing state court and assert a personal jurisdiction defense (again, option 1) or allow entry of default and challenge personal jurisdiction upon

attempted enforcement (again, option 2). *See J. Corda Const., Inc. v. Zaleski Corp.*, 911 A.2d 309, 314 (Conn. App. Ct. 2006) (explaining that Connecticut's "full faith and credit jurisprudence" allows a party to "raise lack of personal jurisdiction as a defense to challenge the validity of a foreign court's judgment").

¶34        Issue preclusion, therefore, applies to determine whether any prior adjudication of personal jurisdiction by the Connecticut courts forecloses Trustee from litigating that issue here.

## II.

¶35        Recall that after the Connecticut superior court entered default judgment against Trustee, he appeared and challenged that judgment by filing a motion to dismiss, arguing Connecticut lacked personal jurisdiction because Judgment Creditor never completed proper service of process. Trustee argued that, because of improper service, "the Court lacks . . . personal jurisdiction and this action must be dismissed." The superior court denied the motion to dismiss. Then, on appeal, Trustee's primary argument was that "the trial court erred when it improperly denied [Trustee's] motion to dismiss because the court never had personal jurisdiction over [Trustee]." The Connecticut Court of Appeals disagreed, affirming the default judgment while concluding that "[b]ecause the [superior] court granted that motion and the trustee was subsequently served with the operative complaint, the court had personal jurisdiction over him." *Cocchia II*, 261 A.3d at 97.

¶36        Judgment Creditor argues Trustee litigated the personal jurisdiction issue in Connecticut and lost, and thus he cannot re-litigate the issue in Arizona. While acknowledging that he litigated personal jurisdiction in Connecticut, Trustee claims he did not challenge "substantive personal jurisdiction" in Connecticut. In other words, Trustee challenged personal jurisdiction on one ground—service of process—and not others—minimum contacts, for example—so he is still permitted to assert those challenges in Arizona. We agree with Judgment Creditor that re-litigation of personal jurisdiction is not permitted.

¶37        Trustee followed option 1 in Connecticut—he appeared (albeit late) and objected to personal jurisdiction. The Connecticut courts rejected his defense and affirmed the judgment. In Connecticut, "[t]he general rule of issue preclusion is that [w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive

in a subsequent action between the parties, whether on the same or a different claim[.]" *Torres v. Waterbury*, 733 A.2d 817, 831 (Conn. 1999).

¶38 Each of the elements for issue preclusion is met. Both Trustee and Judgment Creditor were parties in the Connecticut litigation, and they are parties here. Once Trustee's personal jurisdiction defense failed on appeal, the issue of personal jurisdiction was determined by a valid and final judgment in Connecticut—the Appellate Court of Connecticut unequivocally held that "the court had personal jurisdiction over [Trustee]." *Cocchia II*, 261 A.3d at 97. Determining whether the Connecticut superior court had personal jurisdiction was essential to disposing of Trustee's motion to dismiss and his subsequent appeal—personal jurisdiction was the primary (if not only) issue Trustee raised on appeal.

¶39 The only remaining question is whether personal jurisdiction was actually litigated in Connecticut. Trustee is hard pressed to say no considering the parties litigated personal jurisdiction in the Connecticut superior and appellate courts. But Trustee argues the personal jurisdiction argument he makes in Arizona was not litigated because he did not argue a lack of minimum contacts in Connecticut (he only argued a lack of service). Trustee's argument runs headlong into the Restatement (Second) of Judgments § 27. *See Powell*, 922 A.2d at 1078 (relying on comments to Restatement (Second) Judgments § 27); *Dowling v. Finley Assocs., Inc.*, 727 A.2d 1245, 1253 (Conn. 1999) (same). Comment c. to § 27 explains that "[a]n issue on which relitigation is foreclosed may be one of evidentiary fact, of 'ultimate fact' (i.e., the application of law to fact), or of law." If a party suffers an adverse determination on an ultimate fact, "new evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact." Restatement (Second) Judgments § 27 cmt. c. The same goes for an issue of law: "[I]f the issue was one of law, new arguments may not be presented to obtain a different determination of that issue." *Id.* Comment c relies on an illustration stating that a party who loses in one action on a statute of frauds defense because "an oral contract of the kind sued upon is enforceable" cannot in a second action re-assert a statute of frauds defense, "whether or not on the basis of arguments made in the prior action[.]" *Id.* cmt. c illus. 6.

¶40 Applying those concepts here, Trustee lost on a personal jurisdiction defense in the Connecticut action because of sufficient service of process. Thus, he cannot here re-assert a personal jurisdiction defense, "whether or not on the basis of arguments made in the [Connecticut] action." Restatement (Second) Judgments § 27 cmt. c; *accord Barassi v. Matison*, 134 Ariz. 338, 341 (App. 1982) (explaining that issue preclusion

applies even if "legal arguments which could have been presented were not"). Trustee cannot write off his personal jurisdiction loss in Connecticut on grounds that he made a different subsidiary argument. If the Connecticut judgment is unenforceable in Arizona, it cannot be because the Connecticut courts lacked personal jurisdiction.

**¶41**     Trustee's argument is inconsistent with the interest in finality that issue preclusion serves. *See Commissioner v. Sunnen*, 333 U.S. 591, 599 (1948) (issue preclusion "is designed to prevent repetitious lawsuits over matters which have once been decided"). Adopting Trustee's argument would allow him to re-argue personal jurisdiction based on a lack of minimum contacts. But what if Trustee loses that argument in Arizona? If Judgment Creditor decides to enforce the Connecticut judgment in California, could Trustee again defend against enforcement on grounds that he never litigated the fairness prong of personal jurisdiction in Arizona? Or could Trustee argue in California that a new declaration filed in support of his personal jurisdiction defense contains many new details? Those are the possibilities Trustee would have us create. But that is not the way issue preclusion works, and we refuse Trustee's invitation to follow his new path. *See Giehrl*, 188 Ariz. at 458 ("The trial court's decision that '[e]ach court has the right to decide the issue of jurisdiction' fails to implement the Full Faith and Credit Clause and could lead to many inconsistent findings."). Having actually litigated personal jurisdiction in Connecticut, Trustee may not do so again in Arizona (even on different grounds).

### III.

**¶42**     The special concurrence agrees the Connecticut judgment gets Full Faith and Credit. And the special concurrence agrees Trustee is precluded under Connecticut law from re-arguing personal jurisdiction because that issue was litigated in Connecticut.

**¶43**     The special concurrence parts ways with us in two respects. First, the special concurrence criticizes our discussion of issue preclusion, claiming we have unilaterally injected the issue on appeal. The record belies that assertion.

**¶44**     While this Court's prior unpublished memorandum decision in this litigation referred to "*res judicata*," there is no indication therein that the panel decided that *res judicata* (in the narrow sense) was solely applicable moving forward—the panel instead remanded based on the appellate proceedings pending in Connecticut. It is, moreover, unclear how

this Court's passing reference to "*res judicata*" could have bound the trial court in advance of the conclusion of the Connecticut litigation.

¶45          It is also not clear, contrary to the special concurrence's position, that the trial court proceedings focused on claim preclusion. Instead, in his motion to set aside the Connecticut judgment, Trustee left things more open-ended.  Trustee dedicated two paragraphs to the issue of whether personal jurisdiction had been litigated in Connecticut, arguing broadly that "[t]he parties did not litigate, and therefore, the Connecticut court did not decide substantive or constitutional personal jurisdiction[.]" Judgment Creditor took a similar approach, arguing succinctly but broadly that the issue of personal jurisdiction had been litigated in Connecticut.

¶46          Unsurprisingly, based on the parties' broad arguments, the superior court did not focus on claim preclusion to the exclusion of issue preclusion.   The trial court, instead, determined whether personal jurisdiction was litigated—finding that "[t]his issue was not litigated"— and whether personal jurisdiction was precluded—concluding that "[s]ince this issue was never addressed, the Defendants are not precluded from raising it now."  If anything, the trial court's repeated reference to personal jurisdiction as an "issue" and not a "claim" is more consistent with applying issue preclusion.

¶47          The parties' appellate briefing is similarly open-ended as to the applicable preclusion doctrine.  Judgment Creditor's opening brief argues broadly that Trustee fully and fairly litigated personal jurisdiction. He begins his argument with a quote from the U.S. Supreme Court defining the phrase "fully and fairly litigated."   What opinion does he quote? *Underwriters National Assurance Co.*, which we rely upon above (*see supra* ¶ 30) and which held that, under the Full Faith and Credit Clause, personal jurisdiction determinations are subject to *issue preclusion*.  455 U.S. at 714. To be sure, Judgment Creditor relies upon cases applying claim preclusion, but he also relies upon cases applying issue preclusion or both.  Trustee similarly understood that both doctrines are in play.  In the answering brief, Trustee repeatedly refers to both preclusion doctrines—he refers to "preclusion doctrines," "issue preclusion and claim preclusion," "[w]hether to apply the doctrines," "the doctrines of preclusion," and "for a preclusion doctrine to bar [Trustee's] defenses."

¶48          Regardless, appellate courts are duty bound to get the law right, even when the parties and the trial court do not.  This is why parties cannot stipulate to the applicable law and thereby bind appellate courts, and why a legal error going to the foundation of the action may be reviewed

on appeal even when not raised in the trial court. *See Word v. Motorola, Inc.*, 135 Ariz. 517, 520 (1983); *see also Advanced Prop. Tax Liens, Inc. v. Othon*, 255 Ariz. 60, __ ¶¶ 17, 20 (2023) (considering whether a judgment was subject to collateral attack despite that "[t]he trial court, court of appeals, and parties have addressed the issue here as one of standing"). We should not further confuse preclusion principles—as the special concurrence agrees, they are already confusing enough (*see supra* ¶ 17 and *infra* ¶ 62)—by relying on an incorrect doctrine, even if the parties and the superior court did so first. Avoiding further confusion is especially paramount when our analysis could impact another state's law—it is one thing for Arizona judges to muddle Arizona law; it is quite another for them to muddle Arizona and Connecticut law.

¶**49** The special concurrence also parts ways by maintaining that claim preclusion applies. We need not re-hash the reasons why we think that is incorrect as a legal matter. *See supra* ¶¶ 27–31. It is enough to emphasize that applying claim preclusion is inconsistent with the U.S. Supreme Court's application of issue preclusion in *Underwriters National Assurance Co.*, which is likely binding on us. *See* 455 U.S. at 714. Applying claim preclusion is also inconsistent with the option to allow default judgment and still later challenge personal jurisdiction upon attempted judgment enforcement. The special concurrence does not adequately address either inconsistency.

## IV.

¶**50** Arizona law authorizes a discretionary fee award to the prevailing party in an action arising out of contract. *See* A.R.S. § 12-341.01. Each party agrees that the fee-shifting provision applies, and each has requested attorneys' fees incurred on appeal under § 12-341.01. In our discretion, we award reasonable attorneys' fees to Judgment Creditor. As the successful party on appeal, Judgment Creditor is also awarded taxable costs. Both awards are subject to compliance with Arizona Rule of Civil Appellate Procedure 21(a).

## CONCLUSION

¶**51** The Connecticut courts' conclusion that Connecticut had personal jurisdiction over Trustee binds Arizona courts; we, therefore, vacate the superior court's judgment and remand for further proceedings consistent herewith.

**B R O W N**, Judge, specially concurring:

¶52   As a general rule, Arizona's appellate courts may affirm a trial court's ruling if it is correct for any reason supported by the record. *See, e.g., Forszt v. Rodriguez*, 212 Ariz. 263, 265, ¶ 9 (App. 2006). But the majority—in sua sponte raising *collateral estoppel* as the basis for reversal—seems to take the view that appellate courts may also *overturn* a trial court's decision for any reason supported by the record. Because attorneys, litigants, and trial judges should not be required to anticipate undisclosed legal theories to avoid reversal on appeal, I write separately. In doing so, I agree that the superior court's decision must be vacated. Unlike the majority, however, my justification for doing so is based on how Connecticut courts view the doctrine of *res judicata*, the argument that Judgment Creditor pressed in the superior court and now in this appeal. Judgment Creditor has not defended its right to enforce the Connecticut judgment on the theory of collateral estoppel. Preferring to address the arguments actually made by the Judgment Creditor, I would reverse under Connecticut's well-established body of law governing res judicata.[2]

¶53   My alternative resolution of this case is supported by several important principles. First, it seems clear to me that this court's previous mandate informed the superior court and the parties what the court's task on remand would be after the appeal in the Connecticut litigation was finalized—to determine "the impact, if any, of *res judicata* in this case." *See Cocchia I*, 2021 WL 922435 at *3, ¶ 20. In the superior court, Judgment Creditor defended its efforts to collect on the judgment by opposing Trustee's motion to set aside. Quoting this court's memorandum decision, Judgment Creditor asserted that a "defendant who appears in the proceedings and litigates the jurisdictional issues is 'bound on that issue by the doctrine of *res judicata*.'" *Id.* at ¶ 17 (citation omitted). Judgment Creditor also argued that "if personal jurisdiction was litigated in the Connecticut courts [Trustee is] bound by their decisions," and the "doctrine of res judicata demands that the judgment remains in place." At oral argument on the motion, Trustee acknowledged that the issue before the court is "to what extent was that jurisdiction litigated, and does it have any *res judicata* effect." (Emphasis added.) Given this court's mandate, the superior court would have exceeded the scope of remand by addressing collateral estoppel. *See Raimey v. Ditsworth*, 227 Ariz. 552, 555, ¶ 6 (App.

---

[2]  Because the question before us turns on the application of Connecticut law, and the appellate courts there generally use the terms res judicata and collateral estoppel when analyzing preclusion doctrines, I follow the same approach here. *See infra*, ¶ 63.

2011) (recognizing that a "trial court does not have authority to transgress upon the obvious intent of this court by contravening on remand a decision and mandate previously issued") (internal quotation marks and citation omitted).

¶54        Second, "absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal." *Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994).

¶55        Third, issues that are not raised on appeal are considered waived or abandoned. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 14 n.6 (App. 2011) (recognizing that the failure to develop an argument on appeal usually results in abandonment and waiver of the issue).

¶56        Fourth, Judgment Creditor has never raised collateral estoppel, which is an affirmative defense and may be waived if not timely asserted. *See Wells Fargo Bank, Nat'l Ass'n v. Doreus*, 290 A.3d 921, 926 n.5 (Conn. App. Ct. 2023); *see also* Conn. Practice Book § 10–50 ("res judicata must be specially pleaded" as a defense).

¶57        Finally, even assuming this case falls into the very rare circumstance when it is appropriate to reverse a trial court's decision on an issue never previously raised, I would decline to do so here because "it would be unfair to the parties to have the appellate court surprise them by deciding their case on an issue they did not present." *See Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 459, ¶ 29 (App. 2000); *see also State v. Robertson*, 249 Ariz 256, 258, ¶ 9 (2020) (appellate courts "should heed the principles underlying the waiver doctrine"); *Trantor*, 179 Ariz. at 300. This is particularly relevant here, where we are applying Connecticut law to resolve the narrow issue before us. For that reason as well, it is unclear why we are publishing given that the case involves a straightforward analysis of the parties' arguments (both made and waived) applying Connecticut's existing legal principles governing res judicata.[3]

---

[3]        For the most part, the majority ignores these principles, suggesting that getting the law right supersedes all procedural requirements for preserving and presenting appellate arguments. I agree our goal should be to accurately analyze the law, but that exercise occurs within the context of the legal arguments fairly presented in the case. We generally do not deviate from the principles outlined above, except in extraordinary

¶58        Citing Connecticut law, Judgment Creditor argues the superior court erred because the Connecticut courts determined the issue of personal jurisdiction over the Trustee and the Connecticut judgment is not open to collateral attack in Arizona based on the doctrine of res judicata. Judgment Creditor does not argue, or even suggest, that the court erred by failing to apply collateral estoppel.

¶59        The United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1.  "A duly authenticated judgment of a sister state is prima facie evidence of that state's jurisdiction to render it and of the right which it purports to adjudicate." *Oyakawa*, 175 Ariz. at 229.  A party challenging the validity of the foreign judgment bears the burden of proof. *Id*.

¶60        The full faith and credit clause restricts the authority of courts "to decline to enforce an out-of-state money judgment." *Nastro v. D'Onofrio*, 822 A.2d 286, 291 (Conn. App. Ct. 2003).  A judgment may be set aside "if it is jurisdictionally flawed because the foreign court lacked subject matter or personal jurisdiction over the defendant."  *Id.*  "Even as to questions of jurisdiction, however, the principles of res judicata bar further inquiry if 'those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.'"  *Id.* (citation omitted); *see also Durfee v. Duke*, 375 U.S. 106, 109 (1963) ("Full faith and credit thus generally requires every State to give to a judgment at least the res judicata effect which the judgment would be accorded in the State which rendered it.").

¶61        As the majority opinion acknowledges, *supra* ¶ 32, in deciding the enforceability of a foreign judgment, the law of the issuing state controls.  *See Hancock*, 253 Ariz. at 512, ¶ 11.  And because Connecticut is the issuing state, Connecticut law controls.

¶62        The majority opinion correctly states that, historically, substantial confusion has surrounded the doctrines of res judicata and collateral estoppel.  So much, in fact, that in many courts those terms have

circumstances, which are not present here because the case can be resolved based on the application of res judicata under Connecticut law, the only issue raised in the superior court or on appeal throughout the entirety of this litigation.  Thus, I disagree with the majority's decision to opine that this case must be decided based on collateral estoppel when that issue is not properly before us.

been replaced with claim and issue preclusion. *See* Ruth Bader Ginsburg *The Work of Professor Allan Delker Vestal*, 70 Iowa L. Rev. 13, 16 (1984) ("More than any other writer, Professor Vestal is responsible for the increasing use by courts and commentators of the precise, descriptive terms 'claim preclusion' and 'issue preclusion,' in lieu of the less informative, sometimes confusing traditional terminology, 'res judicata' and 'collateral estoppel.'"). But that confusion does not erase our need to look to Connecticut law to resolve this appeal.

¶63        As a general observation, Connecticut courts continue to use the term res judicata, which they define as meaning that "once a matter has been fully and fairly litigated, and finally decided, it comes to rest" and "bars the relitigation of claims actually made in the prior action as well as any claims that might have been made there." *Peterson v. iCare Mgmt., LLC*, 250 A.3d 720, 727 (Conn. App. Ct. 2021) (citation omitted). For the doctrine to apply, "(1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been *an adequate opportunity to litigate the matter fully*; and (4) the same underlying claim must be at issue." *Id.* (emphasis added). Res judicata may apply to claims that "both might and should have been advanced in the first litigation." *Bruno v. Geller*, 46 A.3d 974, 986 (Conn. App. Ct. 2012).

¶64        Here, elements one, two, and four are satisfied. Under the first element, a court has jurisdiction to determine its own jurisdiction "'once it has been put in issue.'" *See Connery v. Gieske*, 147 A.3d 94, 100 (Conn. 2016) (citation omitted). At issue is a default judgment, which is considered "on the merits" and therefore qualifies as a final judgment. *See Slattery v. Maykut*, 405 A.2d 76, 82 (Conn. 1978); *see also Indep. Party of CT-State Cent. v. Merrill*, 200 A.3d 1118, 1142–43 (Conn. 2019). Thus, the first element is satisfied. The second element is satisfied because the parties are the same in both actions. The fourth element is satisfied because domestication of the judgment involves the same operative facts as the claims in Connecticut. *See Smith v. BL Companies, Inc.*, 198 A.3d 150, 158 (Conn. App. Ct. 2018) (noting that because "claims are the same for res judicata purposes, this court has adopted the transactional test," which means that "res judicata extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose").

¶65        Both in the superior court and on appeal, the Trustee has not disputed that these elements were shown. Thus, it has effectively conceded error. *See McDowell Mountain Ranch Cmty. Ass'n, Inc. v. Simons*, 216 Ariz.

266, 269, ¶ 13 (App. 2007) (noting that failure to respond to an argument on appeal may be treated as a confession of error).  In addition, the record on appeal does not contain a complete record of the proceedings conducted by the trial court in Connecticut, such as Judgment Creditor's response to Trustee's motion to dismiss and hearing transcripts.  We presume those missing portions support the rulings made by the Connecticut courts.  *See Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995) ("When a party fails to include necessary items, we assume they would support the court's findings and conclusions.").

**¶66**         Even without these procedural deficiencies, a generous view of the Trustee's briefing suggests his challenge is limited to res judicata's *third* element (adequate opportunity to fully litigate the matter).  He contends that personal jurisdiction based on Connecticut's long arm statute and minimum contacts under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), was not "argued, litigated, or determined in Connecticut" and that any objections he made to the default judgment in Connecticut were only procedural.  Trustee therefore asserts that because he did not challenge personal jurisdiction on those specific grounds, he can now prevent enforcement of the judgment by asserting them for the first time in Arizona.

**¶67**         In his motion to dismiss, Trustee argued in part that the Connecticut Superior Court lacked subject matter jurisdiction and personal jurisdiction over Trustee and the Trust because he was improperly added to the case, and there were other procedural defects.  The Connecticut Court denied his motion, and the Connecticut Court of Appeals affirmed the judgment, explaining the only argument Trustee raised on appeal was that "the trial court improperly denied his postjudgment motion to dismiss for lack of personal jurisdiction because he was not properly cited in as a defendant." *Cocchia II*, 261 A.3d at 94–95.

**¶68**         Allowing a party to hold back a portion of its jurisdictional challenges for later assertion in a separate proceeding in a different jurisdiction directly conflicts with the policies underlying the res judicata doctrine.  *See Weiss v. Weiss*, 998 A.2d 766, 779 (Conn. 2010) (noting "the purposes of res judicata as promoting judicial economy, minimizing repetitive litigation, preventing inconsistent judgments and providing repose to parties"); *Bruno*, 46 A.3d at 986 ("[A] party should not be able to relitigate a matter which it already has had an opportunity to litigate."); *see also Underwriters Nat'l Assur. Co.*, 455 U.S. at 710 ("A party cannot escape the requirements of full faith and credit and res judicata by asserting its own failure to raise matters clearly within the scope of a prior proceeding."); *Baldwin*, 283 U.S. at 525–26 (explaining that public policy

"dictates that there be an end of litigation," and "where one voluntarily appears, presents his case and is fully heard," absent fraud, he should be bound "by the judgment of the tribunal to which he has submitted his cause"). When Trustee decided to challenge personal jurisdiction in the Connecticut court, he needed to present all supporting facts and legal theories. *See Wheeler v. Beachcroft, LLC*, 129 A.3d 677, 685 (Conn. 2016) ("[R]es judicata prevents reassertion of the same claim 'regardless of what additional or different evidence or legal theories might be advanced in support of it.'") (Citation omitted.). By failing to do so, Trustee acted at his own peril.

¶69        Nothing prevented Trustee from challenging other aspects of the Connecticut court's jurisdiction over him in his December 2019 motion to dismiss. He even admits it was his choice. The record confirms that Trustee was fully aware of his alternative arguments because earlier that month in the Arizona trial court he asserted that the Connecticut court had no personal jurisdiction over him due to his lack of minimum contacts. Trustee has made no meaningful argument that he lacked the opportunity to fully litigate the issue of personal jurisdiction in the Connecticut lawsuit.

¶70        Trustee argues that "[e]ven at its extreme, res judicata can be applied only to issues 'raised by the record'" and that because the Connecticut court did not explicitly show a "minimum contacts" analysis, res judicata cannot apply to the issue of personal jurisdiction. The issue, for purposes of evaluating whether res judicata applies, is simply whether personal jurisdiction as a whole was litigated in Connecticut. *See Bruno*, 46 A.3d at 985 ("A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose."); *see also Fink v. Golenbock*, 680 A.2d 1243, 1249 (Conn. 1996). Because Trustee argued lack of personal jurisdiction and it was addressed in Connecticut at both the superior court and appellate court levels, the issue of "personal jurisdiction" was plainly "raised by the record." Thus, based on application of res judicata to the circumstances presented *in this case*, and not the hypothetical scenario on which the majority frames its analysis, Connecticut law bars Trustee from challenging the Connecticut judgment. *See Nastro*, 822 A.2d at 291 ("Even as to questions of jurisdiction, however, the principles of res judicata bar further inquiry if 'those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.'") (quoting *Underwriters Nat'l Assur. Co.*, 455 U.S. at 706); *see also Cocchia I*, 2021 WL 922435 at *3 ("A defendant who appears in the proceedings and litigates

the jurisdictional issues is 'bound on that issue by the doctrine of *res judicata*.'").[4]

¶71     Unlike res judicata, collateral estoppel requires a showing that the issues were "identical" and "actually decided." *See Lyon v. Jones*, 968 A.2d 416, 429 (Conn. 2009) (explaining that for purposes of collateral estoppel, an "issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined") (citation omitted); *Corcoran v. Dep't of Soc. Services*, 859 A.2d 533, 540 (Conn. 2004) ("To invoke collateral estoppel the issues sought to be litigated in the new proceeding must be *identical* to those considered in the prior proceeding.") (Citation omitted.).   Because it is undisputed that Trustee's "minimum contacts" issue was not litigated in Connecticut, where the default judgment was entered, applying res judicata avoids these unargued and unbriefed issues. *See, e.g., Cahaly v. Somers*, 877 A.2d 837, 840 (Conn. App. Ct. 2005) (explaining that because defendants' procedural due process claim was "fully and fairly litigated in the Massachusetts courts," their claim "is barred by the doctrine of res judicata"); *see also Lofts v. Superior Court In & For Maricopa Cnty.*, 140 Ariz. 407, 410 (1984) ("When the rendering court in a *contested* hearing determines it has jurisdiction, its determination is *res judicata* on the jurisdictional issue and cannot be relitigated in another state.")

¶72     Finally, Trustee argues he was denied due process of law, the judgment against him "was wrought with irregularities," and justice would best be served if we affirmed. Even assuming there were irregularities, Trustee has failed to show he was deprived of a full and fair opportunity to challenge the judgment based on lack of personal jurisdiction.  Given that he failed to assert all legal theories supporting that challenge when he had

---

[4]     The majority's analysis references to *Underwriters National Assurance Co.*, 455 U.S. at 714, are not necessarily dispositive on the nuances of Connecticut law governing preclusion doctrines, given that the Supreme Court never mentions issue preclusion/collateral estoppel in that case. *See id.* at 694 (framing the issue as "whether, by refusing to treat the prior Indiana court judgment as res judicata, the North Carolina court has violated the Full Faith and Credit Clause of the Constitution and its implementing federal statute").  Also, because Judgment Creditor never argued that the superior court's ruling must be reversed based on collateral estoppel, we do not know what arguments Trustee would have made against application of that doctrine.  In any event, my analysis focuses on the only issue meaningfully raised by Judgment Creditor—res judicata.

the opportunity, he was not denied due process. Thus, his attempts to assert those theories in Arizona to stop enforcement of the judgment are precluded by res judicata.

**¶73** For all these reasons, I do not agree that the superior court erred in failing to apply collateral estoppel, an argument not presented to the superior court or to this court. As discussed above, the Trustee's attempt to stop enforcement of the foreign judgment is precluded by res judicata under Connecticut law. If the majority disagrees with that analysis, it should affirm the superior court's ruling. Either the res judicata argument presented by Judgment Creditor justifies vacating the court's ruling, or it does not. It is not our role, absent extraordinary circumstances, to tell the superior court it erred when we base our reasoning on an issue we believe should have been raised but was not.

**¶74** Because res judicata precludes litigating personal jurisdiction in Arizona's courts, the superior court erred in granting the Trustee's motion to set aside. For that reason alone, I agree with vacating the court's ruling.



AMY M. WOOD • Clerk of the Court
FILED: AA